UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| **LEAGUE OF WOMEN VOTERS OF VIRGINIA; KATHERINE D. CROWLEY; ERIKKA GOFF; and SEIJRA TOOGOOD,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**VIRGINIA STATE BOARD OF ELECTIONS; ROBERT H. BRINK, JOHN O'BANNON, and JAMILAH D. LECRUISE, in their official capacities as Chairman, Vice-Chair, and Secretary of the Virginia State Board of Elections, respectively; and CHRISTOPHER E. PIPER, in his official capacity as Commissioner of the Virginia Department of Elections,**<br><br>**Defendants.** | Case No. 6:20-cv-00024-NKM |

## BRIEF IN SUPPORT OF JOINT MOTION
## FOR ENTRY OF PARTIAL CONSENT JUDGMENT AND DECREE

Plaintiffs and Defendants (collectively, the "Parties") seek approval of a partial consent judgment and decree that would vindicate the public interests of ensuring access to the ballot, election integrity, and promoting public health during the COVID-19 pandemic. Specifically, the agreement would stop enforcement for Virginia's June 23 primary of the requirement that Virginia absentee voters have another individual observe them removing their absentee ballot from the envelope and then have that individual sign as a witness (the "witness requirement") for voters who believe they may not safely have a witness present while completing their ballot. This agreement represents a limited, fair, adequate, and reasonable arrangement, negotiated through

fast-paced but thorough conversations that have produced an agreement that will benefit all parties while serving the public interest. The Parties therefore request that the Court enter this agreement, which will provide certainty well in advance of the June 23 primary while allowing all qualified Virginians to vote and protect their health.

## FACTUAL BACKGROUND

On March 12, 2020, Virginia Governor Ralph S. Northam declared a state of emergency in Virginia in response to the spread of a respiratory disease (COVID-19) caused by a novel coronavirus known as SARS-CoV-2.[1] In the weeks that followed, the Governor closed all Virginia K-12 schools for the remainder of the academic year,[2] advised that Virginians "with chronic health conditions or aged 65 or older should self-quarantine,"[3] and issued a statewide "Stay at Home" order to last until June 10, directing all Virginians to stay at home except under extremely limited circumstances.[4] As of March 31, the Virginia Department of Health ("VDH") was reporting "widespread community transmission across the state." COVID-19 cases in Virginia continue to rise. As of today (April 27, 2020), Virginia reports 13,535 total cases, 2,066 hospitalizations, and 458 total deaths.[5]

---

[1] Va. Exec. Order No. 2020-51 (Mar. 12, 2020), https://www.governor.virginia.gov/media/governorvirginiagov/governor-of-virginia/pdf/eo/EO-51-Declaration-of-a-State-of-Emergency-Due-to-Novel-Coronavirus-(COVID-19).pdf.

[2] Press Release, Ralph Northam, Governor of Virginia, Governor Northam Orders All Virginia K-12 Schools Closed for Minimum of Two Weeks (Mar. 13, 2020), https://www.governor.virginia.gov/newsroom/all-releases/2020/march/headline-854442-en.html; Press Release, Ralph Northam, Governor of Virginia, *Governor* Northam Orders Statewide Closure of Certain Non-Essential Businesses, K-12 Schools (Mar. 23, 2020), https://www.governor.virginia.gov/newsroom/all-releases/2020/march/headline-855292-en.html.

[3] Press Release, Ralph Northam, Governor of Virginia, Governor Northam Announces New Measures to Combat COVID-19 and Support Impacted Virginians (Mar. 17, 2020), https://www.governor.virginia.gov/newsroom/all-releases/2020/march/headline-854487-en.html.

[4] Va. Exec. Order No. 2020-55 (Mar. 30, 2020), https://www.governor.virginia.gov/media/governorvirginiagov/executive-actions/EO-55-Temporary-Stay-at-Home-Order-Due-to-Novel-Coronavirus-(COVID-19).pdf.

[5] Va. Dep't of Health, *COVID-19 in Virginia*, http://www.vdh.virginia.gov/coronavirus/ (last visited Apr. 27, 2020).

On April 17, Plaintiffs filed this action challenging the enforcement, during the ongoing public health crisis caused by the novel coronavirus, of the witness requirement (as stated in Va. Code § 24.2-706 and § 24.2-707 and as interpreted by 1 Va. Admin. Code 20-70-20(B)), under the First and Fourteenth Amendments of the U.S. Constitution and Section 2 of the Voting Rights Act. Among other relief requested, the Complaint sought to enjoin enforcement of the witness requirement for as long as public health officials continue to recommend social distancing practices due to the risk of community transmission of COVID-19. ECF No. 1 at 33.

On April 21, Plaintiffs filed a motion for preliminary injunction requesting this Court to prohibit the above-named Defendants from enforcing the witness requirement for all Virginia voters for the primary election to be held on June 23, 2020 ("June Primary"), and for all subsequent elections in Virginia until such time as in-person interactions required by compliance with the witness requirement no longer pose a risk to public health and personal safety. *See* ECF No. 17. Plaintiffs' motion further requested that Defendants be ordered to issue guidance instructing election officials to count otherwise validly cast absentee ballots missing a witness signature and conduct a public information campaign in conjunction with city and county election officials about the elimination of the requirement. Plaintiffs' motion included declarations from a highly qualified epidemiologist explaining the risks of enforcing the witness requirement for individual who live by themselves, from the Chief Election Officer of one of Virginia's largest cities as to the impact the witness requirement was already having in the early phases of absentee balloting in a municipal election, and from Plaintiffs about how the witness requirement would deny them or, in the case of Plaintiff League of Women Voters of Virginia, their members, their vote in the June primary without relief, *see* ECF Nos. 17-1, 17-2, 17-4, 17-5, 17-6.

On Friday, April 24, counsel for the parties engaged in settlement negotiations with a focus on Plaintiffs' preliminary injunction motion, and reached an agreement in principle after several days of discussions, reflected in the proposed Partial Consent Judgment and Decree.

**ARGUMENT**

A "consent decree has elements of both judgment and contract," *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 280 (4th Cir. 2002). When "considering whether to enter a proposed consent decree, a district court should be guided by the general principle that settlements are encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999); *see also Stovall v. City of Cocoa, Fla.*, 117 F.3d 1238, 1240 (11th Cir. 1997) ("District courts should approve consent decrees so long as they are not unconstitutional, unlawful, unreasonable, or contrary to public policy."). This policy "to encourage settlements 'has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement.'" *United States v. E.I. du Pont de Nemours and Co.*, No. 5:16-CV-00082, 2017 WL 3220449, at *11 (W.D. Va. July 28, 2017) (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)).

Nonetheless, the Court "must satisfy itself that the agreement 'is fair, adequate, and reasonable' and 'is not illegal, a product of collusion, or against the public interest.'" *North Carolina*, 180 F.3d at 581 (quoting *United States v. Colorado,* 937 F.2d 505, 509 (10th Cir. 1991)). It need not, however, "inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy" because "it is precisely the desire to avoid a protracted examination of the parties' legal rights that underlies entry of consent decrees." *Bragg v. Robertson*, 83 F. Supp. 2d 713, 717 (S.D. W. Va. 2000), *aff'd sub nom. Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275 (4th Cir. 2001).

The Parties meet all of the necessary requirements and have reached an agreement under time-sensitive circumstances that serves the public interest.

**I.      The Court has Jurisdiction over the Partial Consent Judgment and Decree.**

A "consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction." *Loc. No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986). In terms of the subject-matter of this action, Plaintiffs' claims squarely raise the sort of constitutional issue this Court is equipped to decide: whether state election practices burden the fundamental right to vote. *See, e.g., Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

In terms of Article III standing, Plaintiffs have provided substantial evidence that they will be injured by the operation of the witness requirement during the June 23 primary if that witness requirement remains in place. Therefore, they have established "a substantial risk" of harm, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014), that can be remedied with respect to the June primary by waiving the witness requirement for voters who believe they may not safely have a witness present while completing their ballot.

Moreover, the substance of the agreement comes squarely within the scope of the case. Plaintiffs' preliminary injunction sought relief from the witness requirement for the June primary and any future elections affected by the spread of COVID-19. The agreement provides such relief for the June primary, for voters who believe they may not safely have a witness present while completing their ballot. The Court has subject-matter jurisdiction over this proposed consent decree.

**II.     The Proposed Consent Decree is Fair, Adequate, and Reasonable.**

The district court has some flexibility in determining whether a proposed consent decree is fair, adequate, and reasonable, but in doing so, it "must assess the strength of the plaintiff's

case." *North Carolina*, 180 F.3d at 581. This review "does not require the court to conduct a trial or a rehearsal of the trial," but "to ensure that it is able to reach an informed, just and reasoned decision." *Id.* (internal citations and quotations omitted). This review should take into account "the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement." *Id.* (internal citations and quotations omitted). Overall, courts must judge the fairness of the compromise "by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement" but they "do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (internal citation omitted).

Although this case is in its early stages, the issues raised by Plaintiffs demanded time-sensitive resolution as they implicate the upcoming June primary. Many of the concerns raised by Plaintiffs—including the severity of COVID-19 in Virginia and the anticipated risks associated with the witness requirement as applied to certain voters in Virginia for the June 23 primary—are matters of public record. And because this consent decree only seeks partial relief and resolution of this action as it related to Plaintiffs' preliminary injunction, the availability of discovery and timing of this partial settlement do not carry the same weight they might otherwise in a consent decree seeking full resolution of the litigation. Nonetheless, the Parties have each compromised in their positions in order to reach this agreement in recognition of the strength of Plaintiffs' constitutional claim and the interest of the Commonwealth in (i) ensuring that all eligible Virginians need not jeopardize their health or public health to vote, (ii) protecting election integrity, and (iii) that resolution well before the primary will best equip election officials to carry out their duties.

As to the strength of Plaintiffs' case, they have provided valid evidence in their preliminary injunction briefing (ECF No. 17) that enforcing the witness requirement during this pandemic may lead to disenfranchisement of a significant number of qualified Virginians, risks to public health, or both. That evidence includes:

- A detailed declaration from a highly qualified epidemiologist explaining the risks of enforcing the witness requirement for individual who live alone, *see* ECF No. 17-1;

- Declarations from the League about its members and from the individual Plaintiffs who provided credible testimony about how the witness requirement would deny them their vote in the June primary without relief, *see* ECF Nos. 17-4, 17-5, 17-6;

- A declaration from the Chief Election Officer of one of Virginia's largest cities as to the impact of witness requirement she is already observing during the pandemic, and disenfranchisement of voters who cannot comply, *see* ECF No. 17-2; and

- Statistical evidence from the Census Bureau that details the scale of the witness requirement's potential impact on Virginians who live alone, and particularly older Virginians, Virginians with disabilities, and African-American Virginians, *see* ECF Nos. 17 at 14, 17-3 at 4.

Given the likely impact of the witness requirement on certain Virginia voters during the June primary, Plaintiffs had a very real chance of success on their preliminary injunction motion regardless of how the Court weighed the efficacy of the witness requirement in promoting election integrity.

Additionally, the fairness and reasonableness of the proposed decree is reflected in the concessions each party made that nonetheless result in an agreement that will benefit all parties and all Virginians. In their preliminary injunction, Plaintiffs sought an injunction against the witness requirement as to all Virginians not only for the June primary but for all future elections affected by community transmission of COVID-19. ECF No. 16 at 2. Plaintiffs will continue to seek such relief as this litigation moves forward. They also requested attorneys' fees in their complaint and would have likely sought those if they prevailed. ECF No. 1 at 34. But the proposed consent decree provides Plaintiffs relief only for the June primary and is targeted to the

subset of Virginia voters who believe they may not safely have a witness present while completing their ballot and waives the right to any fees and costs. Nonetheless, it confers on Plaintiffs the right to vote in June that they would have otherwise lost due to the COVID-19 public health crisis, and does so for many other Virginians, including some members of the League.

On Defendants' side, though they have agreed to not enforce the witness requirement for the June primary for a limited category of voters (those who believe they cannot have a witness present while completing their ballot), they avoid the possibility of a broader, longer-term preliminary injunction that would apply to the entirety of the witness requirement for all voters, as well as the risk of owing attorneys' fees. They also gain the valuable benefit of having certainty as to the requirements they will apply for absentee ballots in advance of the election, and with sufficient time to incorporate appropriate instructions and provide guidance to local election officials. Additionally, they gain the substantial benefit—as do all Virginians—of avoiding public health consequences of more qualified voters seeking to vote at the polls in June. As Plaintiffs' preliminary injunction brief detailed, evidence is already emerging about COVID-19 transmission occurring at the polls, ECF No. 17 at 6–7, with the latest report citing at *least forty people* in Milwaukee County, Wisconsin alone who have likely contracted COVID-19 from voting in-person on Election Day.[6]

Further supporting the fairness and adequacy of the settlement, the parties are each ably represented by experienced counsel. Plaintiffs' counsel from the American Civil Liberties Union and ACLU of Virginia have decades of combined public interest litigation experience, including substantial experience litigating voting rights cases at all levels of federal courts, including the

---

[6] Teran Powell, *40 Coronavirus Cases In Milwaukee County Linked To Wisconsin Election, Health Official Says*, Milwaukee Journal-Sentinel, Apr. 24, 2020, https://www.wuwm.com/post/40-coronavirus-cases-milwaukee-county-linked-wisconsin-election-health-official-says#stream/0.

7

Supreme Court, while Defendants have the experienced and specialized representation from the Office of the Attorney General. *See, e.g.*, *Carcano v. Cooper*, No. 1:16CV236, 2019 WL 3302208, at *6 (M.D.N.C. July 23, 2019) (finding that "the parties have had the benefit of excellent legal counsel" including representation "by several major nonprofit legal organizations" including the ACLU and the "Defendants are well-represented by the North Carolina Department of Justice."). And "when a settlement has been negotiated by a specially equipped agency, the presumption in favor of settlement is particularly strong." *Md. Dep't of the Env. v. GenOn Ash Mgt., LLC*, No. CIV. PJM 10-0826, 2013 WL 2637475, at *1 (D. Md. June 11, 2013). Here, this presumption certainly applies because the parties are the Virginia State Board of Elections and Commissioner of the Department of Elections—each of which has specialized experience safely administering elections in Virginia.

Because the proposed partial consent decree achieves a fair compromise that benefits all parties and the public interest, it meets the criteria of fairness, adequacy, and reasonableness.

### III. The Proposed Consent Decree is in the Public Interest, and not Illegal or Collusive.

The public interest "favors permitting as many qualified voters to vote as possible." *League of Women Voters of N.C. v. North Carolina,* 769 F.3d 224, 247–48 (4th Cir. 2014) (citations and internal quotation marks omitted). It also favors "safeguarding public health." *Pashby v. Delia*, 709 F.3d 307, 331 (4th Cir. 2013). Each of these interests is advanced by this agreement.

Many voters in Virginia who live alone may not able to violate social distancing protocols to have an individual outside their home witness their absentee ballot or to vote in-person, meaning that they would not be able to cast a vote or have their vote counted in June without this consent decree's elimination of the witness requirement for these individuals. And this protection of the right to vote will happen without harming election integrity. To be clear, the relief in this proposed consent decree does not eliminate the witness requirement altogether

8

and the witness signature line will remain on the ballot envelope, but provides specifically targeted relief to the subset of voters who believe they may not safely have a witness present while completing their ballot. Aside from the witness requirement, many other Virginia laws ensure proper absentee voting including provision of identifying information, a signed attestation confirming identity, eligibility, and lack of double-voting, and a check of the ballot against the list of ballot requests, *see, e.g.,* Va. Code § 24.2-706, 1 Va. Admin. Code 20-70-20(B)(2)-(6), Va. Code § 24.2-710, and penalize malfeasance, *see, e.g.*, Va. Code §§ 24.2-1004(B), 24.2-1012, 24.2-1016.

The proposed consent decree also serves public health in that it promotes the continuation of social distancing as recommended by the Governor and state and federal public health officials. In light of the seriousness of the COVID-19 health crisis, Governor Northam has declared a State of Emergency, closed all Virginia K-12 schools for the remainder of the academic year, advised Virginians "with chronic health conditions or aged 65 or older should self-quarantine," and issued a statewide "Stay at Home" order to last until June 10. VDH has "urge[d] all Virginians to stay home and practice social distancing" and to "stay at least 6 feet away from others" if going out.[7] As of April 27, VDH reported over 13,500 COVID-19 diagnoses in Virginia, resulting in 2,066 hospitalizations and 458 deaths.[8] Additionally, the CDC recommends that states "[e]ncourage voters to use voting methods that minimize direct contact with other people."[9]

---

[7] Va. Dep't of Health, *Travelers*, https://www.vdh.virginia.gov/coronavirus/coronavirus/travel-to-areas-with-widespread-ongoing-community-spread/ (last visited Apr. 27, 2020).

[8] Va. Dep't of Health, *COVID-19 Cases in Virginia*, http://www.vdh.virginia.gov/coronavirus/ (last visited Apr. 27, 2020).

[9] Centers for Disease Control and Prevention, *Recommendations for Election Polling Locations: Interim guidance to prevent spread of coronavirus disease 2019 (COVID-19)*, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last updated Mar. 27, 2020).

Moreover, this agreement is neither illegal nor collusive. The agreement is necessary to protect the constitutional rights of Virginia voters and "violations of federal rights justify the imposition of federal remedies." *Common Cause Ind. v. Marion Cty. Election Bd.*, No. 117CV01388SEBTAB, 2018 WL 3770134, at *2 (S.D. Ind. Aug. 9, 2018). And the Court "has the authority to approve a settlement that modifies state law. Federal courts have broad power to remedy violations of the federal Constitution." *Dillard v. City of Foley*, 926 F. Supp. 1053, 1065 (M.D. Ala. 1995) (citing *Missouri v. Jenkins*, 495 U.S. 33, 57 (1990) and *Dillard v. Crenshaw County*, 831 F.2d 246, 248 (11th Cir. 1987)).

Finally, this agreement was the product of a good-faith negotiation. The parties reached a partial agreement early in the case after time-sensitive, arms-length negotiations. It was only after Plaintiffs filed their complaint and preliminary injunction motion and the Court set a fast briefing schedule that negotiations resulted in a narrow agreement with respect to only the June election as to a specific category of voters. Nor is there any concern here about "elected state officials seek[ing] to bind their successors as to a matter about which there is substantial political disagreement," *Carcano*, 2019 WL 3302208, at *6, as this agreement only covers the June 2020 primary for federal and some local offices.

The proposed Partial Consent Judgment and Decree therefore serves the public interest and is neither illegal nor collusive.

## CONCLUSION

The fast-paced nature of this case and upcoming elections dictated a particularly short and intense negotiation period. But the Parties' negotiation was conducted in good faith, involved compromises on both sides leading to a cabined, fair, adequate, and reasonable deal, and resulted in an agreement that serves the public interests of election integrity, access to the

ballot, and protecting public health. Because this decree meets all of the necessary requirements and considering that "settlements are encouraged" as a matter of public policy, *North Carolina*, 180 F.3d at 581, the Parties request that the Court approve the Partial Consent Judgment and Decree.

Dated: April 27, 2020

*/s/* Davin M. Rosborough_____
Davin M. Rosborough (VSB # 85935)
Dale E. Ho*
Sophia Lin Lakin*
Theresa J. Lee*
Adriel I. Cepeda-Derieux*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
drosborough@aclu.org
dho@aclu.org
slakin@aclu.org
tlee@aclu.org
acepedaderieux@aclu.org

Vishal Agraharkar (VSB #93265)
Eden Heilman (VSB #93554)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF AMERICA, INC.
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
Fax: (804) 649-2733
vagraharkar@acluva.org
eheilman@acluva.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*.

Respectfully submitted,

MARK R. HERRING
Attorney General of Virginia
By: */s/ Carol L. Lewis*
CAROL L. LEWIS (VSB #92362)
MICHELLE S. KALLEN (VSB # 93286)
HEATHER HAYS LOCKERMAN (VSB #65535)
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

*Attorneys for Robert H. Brink, John O'Bannon, Jamilah D. LeCruise and Christopher E. Piper in their official capacities, and the Virginia State Board of Elections*

# CERTIFICATE OF SERVICE

I certify that on April 27, 2020, I served a copy of the foregoing Brief in Support of Joint Motion for Entry of Partial Consent Judgment and Decree via filing with the Court's CMECF system, which sent copies of this document to Counsel of Record.

> */s/* Davin M. Rosborough
> Davin M. Rosborough (VSB # 85935)
> American Civil Liberties Union Foundation
> 125 Broad Street, 18th Floor
> New York, NY 10004
> Tel.: (212) 549-2500
> drosborough@aclu.org
>
> *Counsel for Plaintiffs*