## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF VIRGINIA, *et al.*, | |
| Plaintiffs, | Case No.: 6:20-cv-00024-NKM |
| v. | |
| VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, | |
| Defendants. | |

## BRIEF OF INTERVENOR, REPUBLICAN PARTY OF VIRGINIA, INC., IN OPPOSITION TO MOTION FOR PARTIAL CONSENT JUDGMENT AND DECREE

Patrick T. Lewis (pro hac vice)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
216.621.0200 / Fax 216.696.0740
plewis@bakerlaw.com

Christopher M. Marston (VSB No. 65703)
chris@2562group.com
2652 Group LLC
P.O. Box 26141
Alexandria, VA  22313-6141
571.482.6790 / Fax 703.997.2549

Trevor M. Stanley (VSB No. 77351)
E. Mark Braden (pro hac vice)
Katherine L. McKnight (adm. pending)
Richard Raile (VSB No. 84340)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5403
202.861.1500 / Fax 202.861.1783
tstanley@bakerlaw.com
mbraden@bakerlaw.com
kmcknight@bakerlaw.com
rraile@bakerlaw.com

*Counsel for Intervenor,*
*Republican Party of Virginia, Inc.*

# TABLE OF CONTENTS

I.     Introduction and Summary of Argument ......................................................... 1

II.    Background ............................................................................................... 2

III.   Argument.................................................................................................. 6

    A.     Standard of Review ...................................................................... 6

    B.     RPV's objections may be heard because the proposed consent
       decree would impose obligations or duties on RPV's interests.............. 7

    C.     The proposed settlement is not fair or adequate. ................................ 10

    D.     The Consent Decree has several hallmarks of collusion. .................... 13

    E.     The parties inappropriately ask this Court to enter a consent
       decree without finding an underlying violation of law. ....................... 15

    F.     The public interest is not served by entry of the Consent Decree........ 17

IV.    Alternative methods of voter verification exist ............................................... 18

V.     Conclusion .............................................................................................. 20

## I.   <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Just ten days after the Complaint was filed in this case, and six days after Plaintiffs moved for a preliminary injunction, Plaintiffs and Defendants filed their *Joint Motion for Entry of Partial Consent Judgment and Decree* (ECF No. 35) (the "**Joint Motion**") that seeks the entry of a proposed Consent Decree (ECF No. 35-1) (the "**Consent Decree**"). The Defendants gave Plaintiffs the main relief they sought via preliminary injunction: an agreement not to enforce the absentee ballot witness statute, Va. Code § 24.2-707, for the June 23, 2020 Primary, at least for any voter who believes it would be unsafe to have his or her ballot witnessed.

The Consent Decree should not be approved. Consent decrees, which carry the force of law, may not impose duties or obligations on non-consenting parties. This one does, by requiring RPV to conduct its primary election, and accept the candidates nominated through that primary election, without the benefit of the absentee witness statute.

Nor is the settlement fair and adequate. So far as RPV can tell, the Defendants made little or no effort to defend the statute, despite apparent weaknesses in Plaintiffs' case and the compelling state interest Virginia has in preventing voter fraud and ensuring election integrity. The fact that four different sets of proposed intervenors or *amicus curiae* have participated in this case alone highlights its significance. Yet, the Defendants simply capitulated. Any "concessions" they obtained from Plaintiffs in "settlement" were minor.

Furthermore, the settlement appears collusive. Plaintiffs and Defendants both favor an injunction against the use of the absentee ballot witness statute, at

least for the June 23, 2020 Primary Election. The Attorney General, who represents Defendants and is politically aligned with Plaintiffs, issued a triumphant press release the morning after the Joint Motion was filed proclaiming the agreement a "win for Virginians." And the Joint Motion's timing, filed only a few days after RPV and a separately represented group of voter-intervenors sought to intervene, appears to be an effort to act quickly before other interests could be represented.

Moreover, the parties are using their Consent Decree to attempt to achieve by agreement what they appear not to have the authority to order on their own. The General Assembly has prescribed the absentee ballot process for Virginia, and earlier this month passed legislation making revisions to the relevant statute—but preserving the witness requirement. The statute is presumed valid, and absent a finding that it violates federal law, the Court should not enjoin the statute simply because the parties ask it to do so via their proposed Consent Decree.

For these reasons, the Court should not adopt the proposed Consent Decree. If, however, the Court feels it must ask, RPV believes that alternatives be considered to simply enjoining the statute's enforcement.

## II.    **BACKGROUND**

On April 17, 2020, this action was commenced with the filing of a Complaint (ECF No. 1,  the "**Complaint**") by three Democratic Party voters and an ideologically aligned interest group, seeking to enjoin the enforcement of Va. Code §§ 24.2-706 and 24.2-707 "while emergency orders regarding COVID-19 transmission are in effect and/or while public health officials continue to recommend social distancing practices due to risk of community transmission of

COVID-19...." (Compl. at 33, ¶ A.) Plaintiffs sought related relief, including requests for orders to be issued to "city and county election officials to count otherwise validly cast absentee ballots that are missing a witness signature for Virginia's primary and general elections in 2020" and for a "public information campaign informing Virginia voters about the elimination of this requirement..." (*Id.* at 34, ¶ B(2-3).) And, of course, Plaintiffs seek their attorney fees and costs. (*Id.* at 34, ¶¶ C-D.)

On April 21, 2020, Plaintiffs filed their *Motion for Preliminary Injunction* (ECF No. 16, their "**Motion for PI**") seeking the issuance of the following preliminary injunction:

> (1) Prohibiting Defendants from enforcing the witness requirement (as stated in Va. Code § 24.2-706 and § 24.2-707 and as interpreted by 1 Va. Admin. Code 20-70-20(B)) for all Virginia voters for the June 23 primaries and for any and all subsequent elections in Virginia until such time as in-person interactions required by compliance with the witness requirement no longer pose a risk to public health and personal safety;

> (2) Ordering Defendants to issue guidance instructing city and county election officials to count otherwise validly cast absentee ballots that are missing a witness signature for Virginia's June 23 primary elections; and

> (3) Ordering Defendants to conduct a public information campaign informing Virginia voters about the elimination of this requirement, in coordination with city and county election officials.

(Mot. for PI at 2.)

On April 23, 2020, three voters (Sheila DeLappe Ferguson, et al.) (the "**Ferguson Proposed Intervenors**") filed a motion to intervene (ECF No. 22) seeking to intervene in the case to vindicate their right to vote.

On April 24, 2020, Intervenor Republican Party of Virginia, Inc. ("**RPV**") and three voters moved to intervene (ECF No. 28), seeking to vindicate their First and

Fourteenth Amendment rights as well as their and their members' fundamental right to vote.

Later in the day on April 24, 2020, the Court held a status conference in which counsel for Defendants represented the Defendants were interested in settlement, and RPV offered to participate in settlement discussions. The Court then set a very tight briefing deadline for the Motion for PI and the intervention motions and scheduling argument for May 4. (ECF No. 31.)

On April 27, 2020, with intervention motions still pending and a briefing schedule set on the Motion for PI, Plaintiffs and Defendants filed the Joint Motion seeking entry of the Consent Order. In the proposed Consent Order, Plaintiffs and Defendants agreed to the following:

> 1. For the Primary elections scheduled for June 23, 2020, Defendants shall not enforce the requirement, as stated in Va. Code § 24.2-706 and § 24.2-707, that absentee voters who believe that they may not safely have another individual present to witness the voter open, mark, and refold their ballot, and then have that that individual sign the absentee ballot envelope next to the voter's statement and signature.

> 2. Defendants shall issue guidance instructing all relevant city and county election officials to count all absentee ballots in the June primary that are otherwise validly cast but missing a witness signature.

> 3. Defendants shall issue updated instructions to include with all absentee ballots as provided in Va. Code. § 24.2-706—or issue guidance instructing all relevant city and county election officials to modify or amend the printed instructions accompanying each absentee ballot—to inform voters that any absentee ballot cast in the June Primary without a witness signature will not be rejected on that basis and specifically informing voters in bold print that they may disregard the witness signature line on the absentee ballot envelope if they believe they may not safely have a witness present while completing their ballot.

> 4. Defendant Commissioner of Elections shall take additional reasonable steps to inform the public that the witness requirement will

not be enforced for the June Primary for those absentee voters who believe they may not safely have a witness present while completing their ballot, and issue guidance instructing all relevant city and county election officials to do the same.

5. Plaintiffs will withdraw their motion for a preliminary injunction.

6. In accordance with the terms of this Consent Decree, the Consent Parties shall each bear their own fees, expenses, and costs incurred as of the date of this Order, with respect to all claims raised by Plaintiffs against the Defendants.

(Consent Order pp. 5-6.)

As can be seen, the limited differences between the preliminary injunction

requested in the Motion for PI itself and the proposed Consent Order are as follows:

- The injunction only applies to the June 23, 2020 Primary Election and not to subsequent elections;

- More specific direction is provided as to how Defendants will instruct or educate election officials and voters;

- A representation that the Motion for PI would be withdrawn upon entry of the Consent Decree; and

- A waiver by Plaintiffs of their attorney fee claim for time incurred as of the date of the Consent Order

On April 28, 2020, the Virginia Attorney General's office, who represents

Defendants in this litigation, issued a press release publicizing the proposed

Consent Decree. The press release stated, among other things, that:

"This agreement is a win for Virginians because it will protect both the health and voting rights of those who would otherwise have to violate social distancing requirements and jeopardize their well-being just to exercise their fundamental right to vote," **said Attorney General Herring**. "No Virginian should have to choose between their health and their right to vote during this pandemic." (emphasis in original)[1]

---

[1] Office of Virginia Attorney General Mark R. Herring, *Attorney General Herring Reaches Agreement To Promote Safe Absentee Voting By Mail*, Apr. 28, 2020,

Defendants' press release even paraphrased the talking point from their Motion for PI that the witness signature requirement allegedly will "force thousands of voters to choose between disenfranchisement and placing their health in grave peril." (ECF No. 17 at 1.)

Later in the day on April 28, 2020, Defendants filed their only substantial pleading to date in this case: an opposition to RPV's motion to intervene. (ECF No. 49.)  So far as RPV is aware, no discovery of any kind has been exchanged and the case is in its infancy.

III.   **ARGUMENT**

A.   **Standard of Review**

When considering whether to grant a consent decree, the Court should "not blindly accept the terms of a proposed settlement." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999), citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). "Rather, before entering a consent decree the court must satisfy itself that the agreement 'is fair, adequate, and reasonable' and 'is not illegal, a product of collusion, or against the public interest.'" *Id.*, quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991). In making its assessment, the "court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement." *Id.* (internal quotations omitted). "If the decree also affects third parties, the court must be satisfied that the effect on them

_____

https://oag.state.va.us/media-center/news-releases/1703-april-28-2020-herring-reaches-agreement-to-promote-safe-absentee-voting-by-mail.

is neither unreasonable nor proscribed. *United States v. City of Miami, Fla.*, 664
F.2d 435, 441 (5th Cir. 1981) (Rubin, J., concurring). Here, for the reasons that
follow, Plaintiffs and Defendants have not met their burden and their Joint Motion
should be denied.

### B. RPV's objections may be heard because the proposed Consent Decree would impose obligations or duties on RPV's interests.

The framework for the adjudication of an intervenor's objection to a consent
decree was laid out in *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v.
City of Cleveland*, 478 U.S. 501 (1986). As the Court explained:

> A consent decree is primarily a means by which parties settle their
> disputes without having to bear the financial and other costs of
> litigating. It has never been supposed that one party—whether an
> original party, a party that was joined later, or an intervenor—could
> preclude other parties from settling their own disputes and thereby
> withdrawing from litigation. Thus, while an intervenor is entitled to
> present evidence and have its objections heard at the hearings on
> whether to approve a consent decree, it does not have power to block the
> decree merely by withholding its consent.

*Id.* at 528-29 (citations omitted). As a result, at a minimum, the RPV's objections to
the Consent Decree are properly before the Court and may be considered by the
Court in determining whether to adopt the Consent Decree.

*Local No. 93* gives even greater protection to an intervenor like RPV to
protect its rights in the face of a consent decree that would infringe those rights. As
the Court explained, "a court may not enter a consent decree that imposes
obligations on a party that did not consent to the decree." *Id.* at 529. This is because
"parties who choose to resolve litigation through settlement may not dispose of the

claim of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement." *Id.*

Hence, where the proposed consent decree would alter the rights of the objecting party, the court should not approve the decree. In *United States v. City of Miami*, 664 F.3d 435 (5th Cir. 1981) (en banc), for example, a police union objected to (and then moved to vacate) a consent decree resolving employment discrimination claims between the federal government and the City of Miami. The decree made several changes to the City's employment practices, and while the Court upheld most of the decree, it reversed those provisions of the decree that changed promotion practices in ways inconsistent with the police union's collective bargaining agreement. *Id.* at 447 (Rubin, J., concurring). Similarly, in *League of United Latin American Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011), the court permitted a voter to intervene in a voting-rights case to oppose a motion by the parties (a city and a civil-rights group) to modify a consent decree, specifically, to switch city council elections from cumulative voting to single-member districts. *Id.* at 434. The voter sought intervention to argue the proposed modified decree infringed his right to vote in elections for all city council members. *Id.* After holding the voter was entitled to intervene of right (reversing the district court's denial of leave to intervene), the Fifth Circuit vacated the consent decree and remanded. *Id.* at 440.

As set forth more fully in RPV's reply in support of its motion to intervene (ECF No. 54), at 2-5, the RPV has distinct interests in the primary and election

structure due to its status as a major political party in Virginia. The RPV made a choice to have a primary (i.e., the June 23, 2020 Primary Election) by statute, Va. Code Ann. § 24.2-509(A), and that primary will select the Republican candidates for the November 2020 General Election. The RPV has both a statutory and constitutionally protected interest in the conduct of its own primary. Changing the rules as Plaintiffs and Defendants seek to do would force the RPV to undertake a different primary election process than the one prescribed by statute, and would force RPV to accept a risk of fraudulent or otherwise unauthorized voting in that primary.[2] Finally, the RPV has a strong interest, both on its own and on behalf of its members and candidates, in preventing voter fraud and enhancing public confidence in the integrity of elections. All of these constitute duties, obligations, or burdens RPV would suffer if the Court issues the Consent Decree.

In opposing intervention, Plaintiffs cited one case to suggest that RPV has no authority to object to the entry of the Consent Decree, *Dillard v. Chilton County Comm'n*, 495 F.3d 1324 (11th Cir. 2007), but it is readily distinguished. In *Dillard*, the intervenors sought to oppose the entry of a consent decree based only on an assertion of a "generalized incompatibility of the consent decree with the rights of all citizens in the county to be free of judicial interference..." *Id.* That type of claim is, as *Dillard* recognized, a textbook example of an "undifferentiated harm suffered in common by all citizens" that is a generalized grievance. *Id.* But *Dillard*

---

[2] The RPV further has an interest in the protecting itself and candidates from changes in the competitive environment.

distinguished that grievance from those of parties "who alleged concrete and particularized injuries in the form of denials of equal treatment *or of vote dilution*..." *Id.* (emphasis added). The vote-dilution risk posed by eliminating a key election integrity measure is one of the interests RPV seeks to vindicate. And, unlike in *Dillard*, a very subject of the Consent Decree is the RPV's own June 23, 2020 Primary Election, at which the party will nominate its candidates for the U.S. Senate and U.S. House. RPV has an obvious, particularized interest in that election and, hence, the proposed Consent Decree. RPV also has a particularized interest in the Consent Decree to the extent it affects the competitiveness of its races.

Because the proposed Consent Decree would impose duties, obligations, or burdens on RPV and its supporters and candidates, and because RPV does not consent to the Consent Decree, the Court should deny the Joint Motion.

### C. The proposed settlement is not fair or adequate.

The Joint Motion should also be denied because the proposed settlement is not fair or adequate under the Fourth Circuit's test. As set forth in *North Carolina*, analysis of the settlement's fairness and adequacy requires the court to "assess the strength of the plaintiff's case." 180 F.3d at 581. That assessment requires an analysis of the extent of discovery and the stage of the pleadings. *Id.*

Here, Defendants capitulated, and did so within ten days of when the Complaint was filed. RPV sees no evidence that Defendants have defended the relevant statute. They simply agreed to enjoin it for the June 23, 2020 Primary Election.

Plaintiffs' evidence has significant weaknesses (*see generally* Br. in Opp. to Mot. for Prelim. Injunction, ECF No. 44, at 8-14), as do their legal theories. (*See generally id.*) Yet there is no evidence that those weaknesses were ever explored by Defendants or informed the ultimate settlement analysis of either party. In addition to Plaintiffs' weaknesses, the Commonwealth also has a compelling interest in deterring voter fraud and protecting election integrity, including through the use of the absentee ballot witness statute.[3] The interest in election integrity is of such great public interest, in fact, that *four* different sets of parties have either sought to intervene or to file an amicus brief in this case. The Joint Motion does not meaningfully analyze the evidence around voter fraud and election-integrity, either.

The failure of the parties to adequately justify the allocation of liability or other substantive terms of a settlement is grounds to deny the entry of a consent decree. *See United States v. Pioneer Natural Resources Co.*, No. 17-cv-0168, 2020 WL 1694471, *6-7 (D. Colo. Apr. 7, 2020) (denying motion of United States to enter into consent decree in CERCLA litigation where the government "failed to discharge its burden of showing that the consent decree is fair, reasonable, and in the public interest'); *United States v. ATP Oil & Gas Corp.*, No. 13-0262, 2015 WL 13648078, *3 (E.D. La. Jan. 28, 2015) (denying entry of consent decree where calculation of

---

[3] It bears noting that the concern about fraud in absentee voting is substantial and, importantly, bipartisan. Brennan Center for Justice, The Truth About Voter Fraud 34 n.16 (2007) (opposing photo identification laws for voters because they "do not address the absentee voting process, where fraud through forgery or undue influence, often directly implicating candidates or their close associates, is far more of a threat").

civil monetary penalty to be paid by defendant was insufficiently supported). The parties' failure to meaningfully analyze the grounds for settlement is a factor weighing against the Court entering the Consent Order in this case.

Plaintiffs will doubtlessly tout the "concessions" they gave to Defendants in connection with the Consent Decree. But those so-called concessions were illusory or minor. Plaintiffs correctly say that the proposed Consent Decree addresses only the June 23, 2020 Primary Election and will not apply by its terms in future elections. But that claim is illusory. As set forth in Intervenors' opposition to the motion for preliminary injunction, claims grounded in future, speculative, and contingent events (i.e., the impact of COVID-19 on the Commonwealth's public health in November 2020) are neither ripe for judicial review nor supported by evidence to meet the burden to satisfy the issuance of preliminary injunction. (*See* ECF No. 44 at 17-26.)

Similarly, Plaintiffs will claim that their "concession" of allowing voters to voluntarily comply with the witness requirement if they can do it without risking their health is significant. But that, too, misses the point. If the absentee ballot witness requirement is no longer a *requirement*, then the Commonwealth, the RPV, and their respective voters are deprived of the election-integrity benefits it provides just the same as if the requirement was enjoined in its entirety.

Finally, as detailed, *infra*, at Section IV, alternative methods of voter verification exist that could help ensure that the Commonwealth's compelling interest in deterring voter fraud and protecting election integrity is balanced with

the current exigent public health needs.  There is no evidence that Defendant even considered employing any such alternative methods of verification.

The proposed Consent Decree is neither fair nor adequate, and the Joint Motion should be accordingly denied.

### D.    The Consent Decree has several hallmarks of collusion.

The substantial risk of collusion at play in this litigation is another reason for the Court to decline to enter the Consent Decree. A consent decree is generally a "request for the court to exercise its equitable powers," which in turn "involves the court's sanction and power and is not a tool bending without question to the litigants' will." *League of United Latin American Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 846 (5th Cir. 1993). In federal court, "parties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction." *Id.*, quoting *System Federation No. 91, Ry. Employees Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 651 (1961).

The "collusion" prong of the *North Carolina* inquiry implicates the Constitutional limitation on the federal judiciary to only act in "the decision of 'Cases' or 'Controversies.' Standing to sue or defend is an aspect of the case-or-controversy requirement." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (emphasis added), quoting U.S. Const., Art. III, § 2.

To satisfy the Cases or Controversies requirement, both sides to a dispute must possess an interest in the outcome. Federal courts demand "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*,

369 U.S. 186, 204 (1962). Hence, "collusive" lawsuits—where the parties are not genuinely adverse—must not be adjudicated in federal courts. *See United States v. Johnson*, 319 U.S. 302, 305 (1943) (a collusive suit lacks "the 'honest and actual antagonistic assertion of rights' to be adjudicated—a safeguard essential to the integrity of the judicial process, and one which we have held to be indispensable to adjudication of constitutional questions by this Court.") And a judgment entered into by non-adverse parties "is no judgment of the court. It is a nullity ...." *Lord v. Veazie*, 49 U.S. 251, 256 (1850). Put another way, there is "no case or controversy within the meaning of Art. III of the Constitution" when "both litigants desire precisely the same result ...." *Moore v. Charlotte-Mecklenburg Bd. of Edn.*, 402 U.S. 47, 47-48 (1971) (holding that where both parties to a school desegregation suit argued the state's anti-busing law was unconstitutional, there was no Article III "case or controversy").

Here, there are multiple indicia of collusion. The Defendants have so far failed to defend the absentee ballot witness statute. Instead, they almost immediately decided to enter into the Consent Decree to enjoin its use, issued a press release touting their deal, and have actively tried to exclude RPV from this litigation, which would lead to the statute having no defender in Court. The Defendants' failure to defend the statute, and their almost immediate decision to enter a consent decree to enjoin the statute, is evidence of collusion. *See, e.g., Horne v. Flores*, 557 U.S. 443, 449 (2009) (observing that "public officials sometimes consent to...decrees that...bind state and local officials to the policy preferences of

their predecessors and may thereby deprive future officials of their legislative and executive powers"); *Northwest Environmental Advocates v. E.P.A.,* 340 F.3d 853, 855 (9th Cir. 2003) (Kleinfeld, J., dissenting) (warning that "consent decrees between advocacy groups and agencies presents a risk of collusion to avoid executive and ultimately democratic control over the agencies"); *Carcano v. Cooper*, No. 1:16cv236, 2019 WL 3302208, *6 (M.D.N.C. July 23, 2019) ("where there has been little adversarial activity, a federal court must be especially discerning when presented with a proposal in which elected state officials seek to bind their successors as to a mater about which there is substantial political disagreement").

In effect, Defendants are aligned with Plaintiffs, and this Court should find the resultant proposed Consent Decree bears too many hallmarks of collusion to be appropriately entered by the Court. The Joint Motion should be denied.

### E.   The parties inappropriately ask this Court to enter a consent decree without finding an underlying violation of law.

The Consent Decree should also be denied because it asks this Court to exercise federal judicial power to enjoin a state statute without a finding that the statute violates federal law. Importantly, "consent is not enough when litigants seek to grant themselves power they do not hold outside of court." *Clements*, 999 F.2d at 846. Hence, "a local government may not use a consent decree to avoid a state law requiring a referendum before the issuance of construction bonds." *Id.*, citing *Dunn v. Carey*, 808 F.2d 555, 561 (7th Cir. 1986). In *City of Boerne*, the court found it noteworthy that the parties were attempting to use a consent decree to change the manner in which city council members were elected—a change that normally would

require a popular vote. 659 F.3d at 434. Accordingly, "an alteration of the [state] statutory scheme may not be based on consent alone; it depends on an exercise of federal power, which in turn depends on a violation of federal law." *Kasper v. Board of Election Commr's of the City of Chicago*, 814 F.2d 332, 342 (7th Cir. 1987). *See also PG Pub. Co. v. Aichele*, 705 F.3d 91 (3d Cir. 2013) (finding that where no violation of federal law had been found, court lacked authority to enter a consent decree "that would violate a valid state law"); *Kasper*, 814 F.2d at 341-42 ("A consent decree is not a method by which state agencies may liberate themselves from the statutes enacted by the legislature that created them"); Nat'l *Rev. Corp. v. Violet*, 807 F.2d 285, 288 (1st Cir. 1986) (holding that a consent judgment was "void on its face" because State Attorney General lacked authority to stipulate that a statute was unconstitutional); *League of Residential Neighborhood Advocates v. City of Los Angeles*, 498 F.3d 1052, 1055 (9th Cir. 2007) ("A federal consent decree ... cannot be a means for state officials to evade state law").

Most recently, the court in *League of Women Voters of Mich. v. Benson*, No. 2:17-cv-14148, 2019 WL 8106156 (E.D. Mich. Feb. 1, 2019), denied a motion to enter a consent decree resolving a partisan-gerrymandering case. The LWV had cut a deal with the newly elected Democratic Michigan Secretary of State to require portions of Michigan's redistricting maps to be redrawn. The Republican congressional delegation and two GOP state legislators, who had intervened, objected to the entry of the consent decree. *Id.* at *1. The court declined to enter the consent decree because under the Michigan constitution, only the Michigan Legislature had

authority to "regulate the time, place and manner of all...elections." *Id.* at *3, citing Mich. Const. Art. 2, § 4. The Commonwealth's constitution likewise vests authority to "regulate the time, place, manner, conduct, and administration of primary, general, and special elections" in its General Assembly. Va. Const. Art. II, § 4.

Here, in addition to the Virginia Constitutional provisions assigning the regulation of elections to the General Assembly, there is the fact that the General Assembly *just amended* the absentee ballot statute to provide for no-fault absentee balloting. The General Assembly, during that process, elected to retain the witness requirement for absentee ballots. That statute enjoys a presumption of constitutionality, and absent a finding that the statute violates federal law, the parties cannot leverage this Court's federal judicial authority to enjoin that statute by their agreement alone. The Court should, therefore, deny the Joint Motion.

### F.   The public interest is not served by entry of the Consent Decree.

Finally, Plaintiffs and Defendants argue that entry of the Consent Decree will further the public interest by promoting public health. The public health is undeniably a public good, but it is far from clear how the proposed Consent Decree would meaningfully further the public health. As set forth more fully in the RPV's brief in opposition to the motion for preliminary injunction, voters can use the same common-sense social-distancing and safety measures they use for gathering groceries and other necessities to have their ballots witnessed.

Further, the public interest is also served by allowing for state control of its election mechanics by democratically accountable officials. The "functional structure

embodied in the Constitution, the nature of the federal court system, and the limitations inherent in the concepts both of limited federal jurisdiction and of the remedy afforded by section 1983" must also be considered. *Hutchinson v. Miller*, 797 F.2d 1279, 1282 (4th Cir. 1986), quoting *Gamza v. Aguirre*, 619 F.2d 449, 452 (5th Cir. 1980). In our constitutional system, "the electoral process is to be largely controlled by the states and reviewed by the legislature," with states retaining primary authority to regulate their own elections. *Id.* at 1283. The public interest is served by respecting state control over electoral processes, and not by striking down a bedrock, 70-year-old Virginia statute based on a very thin record.

## IV.   ALTERNATIVE METHODS OF VOTER VERIFICATION EXIST

If the Court feels it must act, then the RPV encourages the Court and the parties to consider alternative methods to verify voter identity and resolve this current dispute related to the June primary.

The remedy proposed by the original parties is overinclusive and fails to offer any replacement mechanism to support the election integrity purpose of the witness signature requirement they seek to eliminate. While the remedy purports to be limited to those voters "who believe they may not safely have a witness present while completing their ballot," it would require "election officials to count all absentee ballots in the June primary that are otherwise validly cast but missing a witness signature." Dkt. 35, Ex. A at 5-6.

The RPV would suggest, pursuant to Fed. R. Evid. 408, an alternative remedy to resolve both of these shortcomings. The Defendants would be directed to add an additional set of instructions to the material required to be sent by Va. Code

Ann. § 24.2-706. Those instructions would include a separate form that would require any voter who believes having a witness would be unsafe to attest to that belief and to provide an additional indicator to verify the voter's identity. This additional indicator, such as the last 4 digits of the voter's social security number, would be verified by comparison to the voter's registration record. The voter would include this completed form in the same return envelope pre-addressed to the Secretary of the Electoral Board in which the voter returns "Envelope B." Envelope B, a copy of which is attached as Exbibit A, is the envelope in which the voter inserts the ballot and complete the "Statement of Voter" described in Va. Code Ann. §24.2-706 (2019); the same envelope on which a witness would ordinarily sign. This arrangement—inserting an additional item in the return envelope—would be familiar to election officials as it mirrors the implementation of the Help America Vote Act of 2002, 52 U.S.C. § 21083 ("HAVA"), requirements applicable to voters who vote absentee for the first time after having registered by mail. A copy of the standard instructions for voting an absentee ballot are attached as Exhibit B. A copy of the HAVA notice is attached as Exhibit C.

On Election Day, officers of election handling absentee votes would count the votes of absentee voters who do not seek an exemption from the witness signature requirement as they ordinarily would, setting aside the ballot envelopes of those seeking an exemption from the requirement. The attestations for those set-aside ballots would then be compared to the voter's registration record and, if verified,

19

counted in the usual fashion except for treating the lack of a witness signature as a material omission.

## V.    CONCLUSION

For the foregoing reasons, Intervenor, the Republican Party of Virginia, Inc., respectfully request that the Court deny Plaintiffs' motion for preliminary injunction (ECF No. 16) in its entirety.

Dated:        April 30, 2020                    Respectfully submitted,

*/s/ Christopher M. Marston*
Christopher M. Marston (VSB No. 65703)
chris@2562group.com
2652 Group LLC
P.O. Box 26141
Alexandria, VA  22313-6141
571.482.6790 / Fax 703.997.2549

Trevor M. Stanley (VSB No. 77351)
E. Mark Braden (pro hac vice pending)
Katherine L. McKnight (adm. pending)
Richard Raile (VSB No. 84340)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5403
202.861.1500 / Fax 202.861.1783
tstanley@bakerlaw.com
mbraden@bakerlaw.com
kmcknight@bakerlaw.com
rraile@bakerlaw.com

Patrick T. Lewis (pro hac vice pending)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
216.621.0200 / Fax 216.696.0740
plewis@bakerlaw.com

*Counsel for Intervenor,*
*Republican Party of Virginia, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 30, 2020, the foregoing was filed on the Court's electronic case filing system. Notice of the filing was generated by the Court's electronic system. Copies of the filing are available on that system.

<u>*/s/ Christopher M. Marston*</u>
Christopher M. Marston (VSB No. 65703)
