CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
4/30/2020
JULIA C. DUDLEY, CLERK
BY:  s/ CARMEN AMOS
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF VIRGINIA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, <br><br> *Defendants.* | CASE NO. 6:20-CV-00024 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Sheila DeLappe Ferguson, Sandy Burchett, and Diane Crickenberger's ("Prospective Intervenors") motion to intervene as defendants and crossclaimants in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure. Dkt. 22. The Prospective Intervenors seek to intervene in order to protect their right to vote from Plaintiffs' requested relief, which they argue (1) strips "vital safeguards" against voting fraud provided by state legislation, (2) violates the purported right to vote under the *Purcell* principle (barring court orders affecting the conduct of closely upcoming elections), and (3) violates their purported right "to have, and to vote in, federal elections with the manner of election chosen by the legislature." Dkt. 23 at 4. Prospective Intervenors have not met the Federal Rules' requirements to intervene as parties in this case as of right under Rule 24(a), because their stated interests are, at most, generalized interests that are shared by every other eligible voter in Virginia. Nor will they be permitted to intervene under Rule 24(b), because doing so would unduly prejudice the parties by opening the doors of this suit to any Virginia voter inclined to join. Nonetheless, the Court will hear Prospective

Intervenors' arguments on the merits of this case, construing their submissions as briefs of amicus curiae. For the reasons stated herein, their motion has been denied. Dkt. 55.

## I.     Background

On April 17, 2020, the League of Women Voters of Virginia and several individual voters filed suit against the Virginia State Board of Elections and several state officials seeking to enjoin enforcement of Va. Code § 24.2-707(A), which mandates that all absentee ballots be signed by a witness before submission. Dkt. 1. ¶¶ 1–2. On April 21, 2020, Plaintiffs moved for a preliminary injunction to that effect. Dkt. 16. Plaintiffs argue that the requirement unduly burdens their right to vote, given the public health crisis spawned by the novel coronavirus ("COVID-19") pandemic and Governor Ralph Northam's stay-at-home order presently in effect through June 10, 2020, as well as state and federal government's social distancing guidelines, which are expected to remain in place until there is a treatment or vaccine for COVID-19. Dkt. 1 ¶¶ 2–3, 35; *see* Va. Executive Order No. 2020-55. To this end, Plaintiffs have moved for a preliminary injunction to enjoin the requirement for votes cast in Virginia's June 23, 2020 primary election[1] "and for any and all subsequent elections in Virginia until such time as in-person interactions required by compliance with the witness requirement no longer pose a risk to public health and personal safety." Dkt. 16 at 2.

On April 23, 2020, two days after Plaintiffs filed their motion for a preliminary injunction, the Prospective Intervenors filed their motion to intervene in this case. Dkt. 22. The next day, the

---

[1] The June 23 primary features several intraparty races for U.S. House of Representative seats, Democratic primaries for five local elections, and a Republican primary for the U.S. Senate Seat currently held by Sen. Mark Warner. *See* Va. Dept. of Elections, *Certified Candidates in Ballot Order for June 23, 2020 Primary Elections*, available at www.elections.virginia.gov/media/castyourballot/candidatelist/June-2020-Primary-Candidates-List-(4)-1.pdf (last visited: April 27, 2020).

Republican Party of Virginia together with three registered voters also filed a motion to intervene in this case. Dkt. 28. The Court held a status conference that day with the Plaintiffs, Defendants, and the proposed intervening parties in this case, in order to develop an expedited briefing schedule and entertain the litigants' preliminary views on a variety of other topics. On April 28, 2020, the Court received motions in opposition to the pending motions to intervene, Dkts. 40, 49. On April 29, 2020, the intervening parties filed their reply briefs. Dkts. 53, 54.

On April 27, 2020, the existing Plaintiffs and Defendants to this action filed their "Joint Motion for Entry of Partial Consent Judgment and Decree," Dkt. 35, which would resolve these parties' dispute over the application of the witness signature requirement for only the upcoming June election. The proposed partial consent judgment and decree provides:

> Defendants shall issue updated instructions to include with all absentee ballots as provided in Va. Code § 24.2-706—or issue guidance instructing all relevant city and county election officials to modify or amend the printed instructions accompanying each absentee ballot—to inform voters that any absentee ballot cast in the June Primary without a witness signature will not be rejected on that basis and specifically informing voters in bold print that they may disregard the witness signature line on the absentee ballot envelope if they believe they may not safely have a witness present while completing their ballot.

Dkt. 35-1 at 6.

This Memorandum Opinion addresses the Prospective Intervenors' motion in this case, Dkt. 22, which this Court denied on April 29, 2020, Dkt. 55. In a separate Order issued that day, the Court granted in part and denied in part the other motion for intervention in this case, Dkt. 28. Pursuant to that Order, Dkt. 57, the Court permitted the Republican Party of Virginia to intervene under Rule 24(b), but it denied Vincent E. Falter, Mildred H. Scott, and Thomas N. Turner, Jr., the ability to do so. Falter, Scott, and Turner were three registered voters who had attempted to intervene, and the reasoning set forth in this Memorandum Opinion explaining the denial of

Prospective Intervenors' (Ferguson, Burchett, and Crickenberger) motion to intervene applies with equal force to them.

## II.     Legal Standard

Fed. R. Civ. P. 24 governs a movant's ability to intervene in an ongoing federal action. Rule 24(a)(2), which concerns intervention "of right," mandates that a court permit a movant to intervene upon a timely motion when that movant "claims an interest related to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." This requires the movant to demonstrate "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (citing *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir.1991)). The party moving for intervention under Rule 24(a) bears the burden of establishing their right to intervene in the case. *Matter of Richman*, 104 F.3d 654, 658 (4th Cir. 1997); *Penn. Nat. Mut. Cas. Ins. Co. v. Perlberg*, 268 F.R.D. 218, 225 (D. Md. 2010). The intervening party's motion will be denied unless it can demonstrate intervention is warranted under each of these factors. *N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019); *United Guar. Residential Ins. Co. of Ia. v. Phila. Sav. Fund Soc'y*, 819 F.2d 473, 474 (4th Cir. 1987). Whether a movant has satisfied the requirements for intervention of right is committed to the discretion of the district court. *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*, 314 F.R.D. 180, 183 (E.D. Va. 2016) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)).

Additionally, under Rule 24(b)(1)(B), concerning "permissive intervention," "the court *may* permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." (emphasis supplied). But "[i]n exercising its discretion" to permit intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Thus, where movants seek permission to intervene under Rule 24(b), they must establish each of the following elements: (1) that their motion is timely; (2) that their claims or defenses have a question of law or fact in common with the main action; and (3) that intervention will not result in undue delay or prejudice to the existing parties." *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-00066, 2018 WL 5621982, at *5 (W.D. Va. Oct. 30, 2018) (Urbanski, C.J.). The decision whether to allow permissive intervention similarly lies "within the sound discretion of the trial court." *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003).

### III.    Analysis

The Prospective Intervenors move the Court for permission to intervene principally as a matter of right under Rule 24(a)(2). Alternatively, they request that the Court grant permissive intervention through Rule 24(b). The Court has concluded that they are not entitled to intervene as of right and their permissive intervention in this case is not warranted.[2]

### A.  Rule 24(a): Intervention as of Right

Rule 24(a) first requires a prospective intervenor to demonstrate "an interest in the subject matter of the action," which the Supreme Court has characterized as necessitating "a significantly

---

[2] Since the Court concludes that Prospective Intervenors have not satisfied the requirements in Rule 24 to intervene in this case, it need not address the constitutional question of whether the Prospective Intervenors must also demonstrate Article III standing to file their proposed answer or cross claim in this suit.

protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The Fourth Circuit has found this standard to have been met where a putative intervenor "stand[s] to gain or lose by the direct legal operation of the district court's judgment on [the plaintiff's] complaint." *Teague*, 931 F.2d at 261. In this case, the Prospective Intervenors argue that the requested relief would violate their "fundamental right to vote, thereby creating a valid interest in this action." Dkt. 23 at 3. Specifically, they claim that Plaintiffs' requested relief threatens this interest because it would dilute their vote for three reasons. First, Prospective Intervenors contend that the relief sought would threaten their interest because the challenged witness requirement acts as a "vital safeguard against voting fraud"; second, its removal at this time would violate the right to vote under the *Purcell* principle, barring near-election court orders; and third, Plaintiffs' relief would violate Prospective Intervenors' purported right, pursuant to the Elections Clause of the federal Constitution to have, and to vote in, federal elections in the manner of election chosen by the legislature. *Id.* at 4.

The Prospective Intervenors cite seventeen cases for their proposition that "[a]llowing voter intervention is not uncommon. In fact, Voters have been permitted to intervene in many cases." Dkt. 53 at 9. They do not provide any parenthetical information summarizing the relevant aspects of these cases, nor do they go on to explain why these cases help their position. The Court has examined each of these cases and did not find that any of them were binding or persuasive on the question of whether voters similarly situated to Prospective Intervenors here have a right to intervene as defendants in an action pursuant to Rule 24(a), on the basis that the plaintiff's sought relief threatened their constitutional right to vote. Indeed, many of the cited cases permitted voters to intervene as plaintiffs, some permitted intervention permissively under Rule 24(b) based largely

on those courts' discretion, and a great number do not whatsoever explain the reasoning for allowing voters to intervene.

Those courts that have addressed intervention motions from similarly situated prospective intervenors bringing similar claims have regularly denied intervention as of right under Rule 24(a). *See, e.g.*, *Lee v. Va. Bd. of Elections*, No. 3:15-cv-357, 2015 WL 5178993, at *3 n.7 (E.D. Va. Sept. 4, 2015) (denying intervention to voters and stating that "[t]he particular voters seeking intervention have identified no interest distinct from that of every other registered voter in the Commonwealth"); *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis. 2015) (denying legislators and individual voters' motion to intervene as of right in voting rights case deciding legality of anti-fraud measure because these parties did not have any legally protected interest in fraud-free elections or risk that their vote would be diluted by fraudulent voters under Rule 24); *United States v. Florida*, No. 4:12-cv-285, slip op. at 3 (N.D. Fla. Nov. 6, 2012) (denying True the Vote and Judicial Watch's motions for intervention based on their asserted interest in accurate voting rolls because "these asserted interests are the same for the proposed intervenors—and Judicial Watch's members—as for every other registered voter in the state"); *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 251 (D.N.M. 2008) (holding that a legislator who voted for an anti-fraud election regulation could not intervene in a suit challenging it because he did not have a particularized interest in the interest at stake); *Am. Civil Liberties Union of N.M. v. Santillanes*, No. 05-cv-1136, 2006 WL 8444081, at *3 (D.N.M. July 12, 2006) (denying voters' intervention motion as of right because the interest in fraud-free elections is common to all voters). There is nothing that distinguishes the Prospective Intervenors' interest in this case from that of any other eligible voter in Virginia. Indeed, as the Prospective Intervenors themselves argue, "[t]he federal right to vote is fundamental." Dkt. 23 at 3. Courts are typically disinclined to allow

intervenors who merely assert a "generalized public policy interest shared by a substantial portion of the population." *Bates v. Jones*, 904 F. Supp. 1080, 1086 (N.D. Cal. 1995); *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (holding that the interest must be unique to the party seeking to intervene); *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 779, 781–82 (9th Cir. 1986) (stating that such generalized interests do not confer a right to intervene).

Prospective Intervenors argue that any characterization of their constitutional right as a generalized interest "cannot be reconciled with the Supreme Court's conclusion that "[t]he right to vote is personal," and includes protection against dilution and disenfranchisement. Dkt. 53 at 8 (quoting *Reynolds v. Sims*, 377 U.S. 533, 555, 561 (1964)) (alterations in original). That right may indeed be "personal" but that does not make their purported interest in this case particularized to them such that they may intervene as defendants in this action under Rule 24. The fact remains, despite its "personal" nature, the right to vote—and any interest in protecting that right from dilution or debasement—is no different as between any other eligible Virginian, and indeed, any other eligible American. It may be personal, but it is also *universal* to those that qualify for the franchise. Prospective Intervenors do nothing to identify how the removal of the witness signature requirement risks the dilution of their vote in any way that is different from the rest of this state's electorate. Thus, their purported interest in this case is not a particularized sufficient to meet the requirements of Rule 24(a).

As the Prospective Intervenors have no particularized interest in this case, the Court need not address whether their ability to protect that interest would be impaired by this action, nor need it address whether that interest is adequately represented by the Commonwealth. That the existing Plaintiffs and Defendants to this suit have filed a motion for a partial consent judgment addressing the June 2020 primary does not compel a different conclusion, as the interests the Prospective

Intervenors seek to enforce are no less generalized than before this consent judgment was proposed. *See Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1333 (11th Cir. 2007) (finding intervenors' interest was only "generalized incompatibility of the consent decree with the rights of all citizens in the county to be free of judicial interference . . . with the democratically selected form of local governance").

The Court will emphasize, however, that the resolution of this action will in no way impair the Prospective Intervenors' ability to litigate any interest they might have in the claim underlying their proposed crossclaim—to the extent they have standing to bring it. *See Lance v. Coffman*, 549 U.S. 437, 442 (2007) ("The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past.") Even if this Court affords Plaintiffs the relief they seek—suspending the Commonwealth's witness signature requirement—that would not prevent a court from separately considering the Prospective Intervenors' crossclaim or the relief they request, *i.e.*, striking down the Department of Elections' instruction to qualified voters to mark "reason 2A My disability or illness" for absentee voting in the May and June 2020 elections due to COVID-19" in order to satisfy the Commonwealth's "excuse" requirement for absentee voting. Dkt. 23 at 10 (citing Va. Dep't of Elections, *Absentee Ballots*, https://www.elections.virginia.gov/casting-a-ballot/absentee-voting/ (last visited Apr. 22, 2020)). This is because the question that Plaintiffs pose to this Court in their complaint—whether the witness signature requirement is constitutional as applied during the COVID-19 pandemic—and the question that Prospective Intervenors pose in their crossclaim—whether expanding those who qualify for absentee voting is constitutional—can be analyzed independent of one another.

Because Prospective Intervenors have not demonstrated that they have any particularized interest at stake in this action, the Court will deny their attempt to intervene in this suit as of right, pursuant to Rule 24(a).

### B. Rule 24(b): Permissive intervention

In order to intervene under Rule 24(b), a proposed intervenor must demonstrate "(1) that their motion is timely; (2) that their claims or defenses have a question of law or fact in common with the main action; and (3) that intervention will not result in undue delay or prejudice to the existing parties." *RLI Ins. Co.*, 2018 WL 5621982, at *5. As stated previously, the decision whether to allow permissive intervention lies "within the sound discretion of the trial court." *Pennington*, 352 F.3d at 892.

The Court accepts that the Prospective Intervenors' motion to intervene, which was filed only six days after the filing of Plaintiffs' complaint and only two days after the filing of their motion for a preliminary injunction, is timely. *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974) ("Rule 24 is silent as to what constitutes a timely application and the question must therefore be answered in each case by the exercise of the sound discretion of the court."); *CVLR Performance Horses, Inc. v. Wynne*, No. 6:11-cv-00035, 2013 WL 6409894, at *1 (W.D. Va. Dec. 9, 2013).[3] Despite their timely attempt at intervention in this action, the Court will deny their motion because permitting the Prospective Intervenors to participate in this litigation poses a substantial risk of prejudice to the existing parties to this suit.

---

[3] This is true even considering the expedited schedule under which this Court has set briefing for the Plaintiffs' motion for a preliminary injunction, which during the April 24, 2020 status conference the Prospective Intervenors agreed to abide by if admitted into the action. That being said, given the speed at which this case is proceeding, their decision to wait to file their eventual motion for a preliminary injunction or temporary restraining order in furtherance of their proposed crossclaim, even provisionally, weighs against any finding of timeliness under this requirement.

The Court acknowledges that the Prospective Intervenors' crossclaim does share a similar factual and legal basis with the Plaintiffs' suit challenging the witness signature requirement. The Prospective Intervenors' proposed crossclaim, however, would unnecessarily expand the scope of the litigation in this case to include a separate and distinct challenge to the Commonwealth's decision to permit absentee voters to meet the "excuse" requirement for absentee voter eligibility. *See N.C. State Conf. of NAACP*, 332 F.R.D. at 172 (stating that a determination that motion's timeliness and a finding that the proposed answer "reflects defenses which present common issues of fact and law" does not compel a district court to permit intervention under Rule 24(b) and denying because intervention would unduly prejudice the existing parties). Further, allowing them to intervene as defendants against Plaintiffs' claim "would likely detract from, rather than enhance, the timely resolution, clarity, and focus on, solely the weighty and issues to be addressed in this case" when considering their need to defend against "dueling defendants" litigating a crossclaim. *Id.* (denying state legislators' motion to intervene under Rule 24 in voting rights case where legislators claimed that the state did not adequately represent their interests in defending the constitutionality of an election regulation).

The Court also has already emphasized that the interest the Prospective Intervenors purport is at stake in this case is one that is common to at least any Virginian who has registered to vote. The Court is not inclined to open the floodgates on this lawsuit to any voter in the state who would like to intervene. *See Farm Labor Organizing Comm. v. Stein*, No. 1:17-cv-1037, 2018 WL 3999638, at *23 (M.D.N.C. Aug. 21, 2018); *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 31 (S.D. W. Va. 2015) (denying intervention because it would invite other individuals to petition for permissive intervention and the Court could not "draw a meaningful line that prevents all [of them] from gaining permissive intervention in this case, since all would have an

argument for intervention just as tenable"); *Santillanes*, 2006 WL 8444081, at *3. Permitting the Prospective Intervenors to enter this litigation would risk converting this lawsuit into a public forum, clearly prejudicing the individual parties in this suit and causing needless complication and delay to their proceedings. Even if the Court were to deny any such future motions for lack of timeliness, the consumption of judicial resources in doing so risks unduly prejudicing the parties in this action. *Ohio Valley Envtl. Coal.*, 313 F.R.D. at 31. Thus, the Court does not find that permissive intervention is warranted in this case.

### IV.    Conclusion

For the foregoing reasons, the Prospective Intervenors have failed to make the required showing under Rule 24(a). The Court also concludes that the Prospective Intervenors' permissive intervention under Rule 24(b) is not warranted in this case. Accordingly, the Court will deny their motion to intervene. Dkt. 22. An appropriate Order was issued in this case on April 29, 2020. Dkt. 55.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this ___30th___ day of April, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE