CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
4/30/2020
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF VIRGINIA, *et al.*, <br> *Plaintiffs*, <br> v. <br> VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, <br> *Defendants*. | CASE NO. 6:20-CV-00024 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

On April 24, 2020, the Republican Party of Virginia ("RPV"), Vincent E. Falter, Mildred H. Scott, and Thomas N. Turner, Jr., filed a motion to intervene as defendants in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure. Dkt. 28. The movants sought to intervene in order "to vindicate their unique interest in the integrity of the Republican Primary Election initiated by RPV to nominate candidates, and in the integrity of the General Election in which those 2 Republican candidates will compete." Dkt. 29 at 1–2. On April 29, 2020, the Court granted this motion with respect to the RPV but denied it with respect to Falter, Scott and Turner. Dkt. 57. This Memorandum Opinion memorializes the Court's rationale for this decision.

## I. Background

On April 17, 2020, the League of Women Voters of Virginia and several individual voters filed suit against the Virginia State Board of Elections and several state officials seeking to enjoin enforcement of Va. Code § 24.2-707(A), which mandates that all absentee ballots be signed by a witness before submission in order to be counted. Dkt. 1. ¶¶ 1–2. Plaintiffs argue that the requirement unduly burdens their right to vote, given the public health crisis spawned by the novel coronavirus ("COVID-19") pandemic and Governor Ralph Northam's stay-at-home order

presently in effect through June 10, 2020, as well as state and federal social distancing guidelines, which are expected to remain in place until there is a treatment or vaccine for COVID-19. Dkt. 1 ¶¶ 2–3, 35; *see* Va. Executive Order No. 2020-55. To this end, Plaintiffs have moved for a preliminary injunction to enjoin the requirement for votes cast in Virginia's June 23, 2020 primary election[1] "and for any and all subsequent elections in Virginia until such time as in-person interactions required by compliance with the witness requirement no longer pose a risk to public health and personal safety." Dkt. 16 at 2. Most recently, Plaintiffs and Defendants proposed a partial consent decree agreeing to withdraw Plaintiffs' preliminary injunction motion in exchange for Defendants' agreement to forego enforcement of Va. Code § 24.2-707(A) for the June 23 primary election.

The RPV is one of two major political parties in Virginia. It is empowered by Virginia law to "provide for the nomination of its candidates, including the nomination of its candidates for office in case of any vacancy." Va. Code § 24.2-508; Dkt. 29 at 2. To this end, it has adopted a direct primary election for the nomination of its candidates that will compete in the general election presently scheduled in Virginia for November 3, 2020. *See* Va. Code § 24.2-516. Falter, Scott, and Turner are registered voters in Virginia who plan to vote in the Republican primary election on June 23, 2020. Dkt. 29 at 2. Turner is also the chairman of the Young Republican Federation of Virginia, which encourages voter participation among young Republicans in Virginia. *Id.* The

---

[1] The June 23 primary features several intraparty races for U.S. House of Representative seats, Democratic primaries for five local elections, and a Republican primary for the U.S. Senate Seat currently held by Sen. Mark Warner. *See* Va. Dept. of Elections, *Certified Candidates in Ballot Order for June 23, 2020 Primary Elections* (last visited: April 27, 2020), available at www.elections.virginia.gov/media/castyourballot/candidatelist/June-2020-Primary-Candidates-List-(4)-1.pdf.

RPV, Falter, Scott, and Turner (collectively "the movants") oppose Plaintiffs' motion for a preliminary injunction as well as the parties' proposed partial consent decree. Dkt. 54 at 13.

The movants filed the present motion with the Court to intervene in this action as defendants on April 24, 2020. Dkt. 28. That day, they provisionally appeared at a telephonic status conference, Dkt. 30, where they agreed that, if allowed to intervene, they would comply with the Court's expedited briefing schedule on Plaintiffs' motion for a preliminary injunction regarding the June 23 primary, Dkt. 16. Plaintiffs and Defendants each filed opposition to the movants' motion to intervene on April 28, to which the movants replied on April 29. Following a status conference on April 29, during which the movants reiterated their willingness to comply with the Court's timeline for briefing Plaintiffs' preliminary injunction motion as well as the parties' proposed partial consent decree, the Court granted the movants' motion with respect to the RPV and denied it with respect to Falter, Scott and Turner. Dkt. 57.

## II.    Legal Standard

Fed. R. Civ. P. 24 governs a movant's ability to intervene in an ongoing federal action. Rule 24(a)(2), concerning intervention "of right," mandates that a court permit a movant to intervene upon a timely motion when that movant "claims an interest related to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." This requires the movant to demonstrate "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (citing *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991)). The party moving for intervention under Rule 24(a) bears the burden

3

of establishing their right to intervene in the case. *Matter of Richman*, 104 F.3d 654, 658 (4th Cir. 1997); *Penn. Nat. Mut. Cas. Ins. Co. v. Perlberg*, 268 F.R.D. 218, 225 (D. Md. 2010). The intervening party's motion to intervene as of right will be denied unless it can demonstrate intervention is warranted under each of these factors. *N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019); *United Guar. Residential Ins. Co. of Ia. v. Phila. Sav. Fund Soc'y*, 819 F.2d 473, 474 (4th Cir. 1987). Whether a movant has satisfied the requirements for intervention of right is committed to the discretion of the district court. *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*, 314 F.R.D. 180, 183 (E.D. Va. 2016) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)).

Rule 24(b)(1)(B), which concerns "permissive intervention," states that "the court *may* permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." (emphasis supplied). But "[i]n exercising its discretion" to permit intervention, the Court "must consider whether the intervention will unduly delay … the adjudication." Fed. R. Civ. P. 24(b)(3). "Thus, where movants seek permission to intervene under Rule 24(b), they must establish each of the following elements: (1) that their motion is timely; (2) that their claims or defenses have a question of law or fact in common with the main action; and (3) that intervention will not result in undue delay or prejudice to the existing parties." *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-00066, 2018 WL 5621982, at *5 (W.D. Va. Oct. 30, 2018) (Urbanski, C.J.). The decision whether to allow permissive intervention lies "within the sound discretion of the trial court." *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003).

### III.   Analysis

The RPV, Falter, Scott, and Turner collectively move the Court to intervene principally as a matter of right under Rule 24(a)(2). Dkt. 29 at 3. Alternatively, they request that the Court grant

4

permissive intervention through Rule 24(b). Dkt. 29 at 7. Because the Court finds that "(1) that their motion is timely; (2) that their claims or defenses have a question of law or fact in common with the main action; and (3) that intervention will not result in undue delay or prejudice to the existing parties," *RLI Ins. Co.*, 2018 WL 5621982, at *5, the Court will permit RPV to intervene under Rule 24(b).[2]

1. Standing

As a threshold matter, Defendants assert that those seeking to intervene must satisfy Article III's standing requirements before a court may allow intervention under Rule 24, which they assert the movants have failed to do. Dkt. 49 at 3. First, in the Fourth Circuit, it is incorrect that intervenors as a general matter must satisfy constitutional standing requirements. *Shaw v. Hunt*, 154 F.3d 161, 165 (4th Cir. 1998) ("a party who lacks standing can nonetheless take part in a case as a permissive intervenor"). But this is not true across the board. Defendants are correct that in some circumstances, a putative intervenor must indeed establish Article III standing, such as when one seeks to intervene in order to assert a new avenue for relief. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).

Standing is also required of an intervenor where the existing parties no longer wish to litigate the action. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 61–62 (1st Cir. 2003) ("It is clear that an intervenor, whether permissive or as of right, must have Article III standing in order to continue litigating if the original parties do not do so."); *Shaw*, 154 F.3d at 165 ("True, without standing they could not have continued their intervenor status 'in the absence of the party [plaintiffs] on

---

[2] Because the Court concludes the RPV may intervene permissively under Rule 24(b), it need not decide whether the RPV is entitled to intervene as a matter of right. *See, e.g.*, *Jacobson v. Detzner*, No. 4:18-cv-262, 2018 WL 10509488, at *1 (N.D. Fla. July 1, 2018); *Ohio Democratic Party v. Blackwell*, No. 2:04-cv-1055, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005).

5

whose side intervention was permitted.'") (quoting *Diamond v. Charles*, 476 U.S. 54, 69 (1986)). From this proposition and the parties' proposed partial consent decree, Defendants argue that "[t]o the extent that the Movants wish to continue litigation regarding the witness requirement for the June primary as applied to voters who believe they may not safely have a witness present while completing their ballot, the Movants must demonstrate that they have Article III standing to do so." Dkt. 49 at 5. But the parties' proposed partial consent decree makes clear that this action will continue, and that the parties have no intention of ceasing litigation. Dkt. 36 at 6 (joint brief supporting partial consent judgment) ("Plaintiffs will continue to seek [relief for elections beyond the June Primary affected by COVID-19] as this litigation moves forward."). Thus, at least by the parties' present posture, the movants seek only to join an ongoing claim for relief, and thus they need not demonstrate independent Article III standing at this time.

    2. <u>The RPV</u>

Before allowing permissive intervention, the RPV must demonstrate "(1) that their motion is timely; (2) that their claims or defenses have a question of law or fact in common with the main action; and (3) that intervention will not result in undue delay or prejudice to the existing parties," *RLI Ins. Co.*, 2018 WL 5621982, at *5.

First, there is no dispute that the RPV has timely moved to intervene, having filed their Rule 24 motion just seven days after Plaintiffs filed their complaint and before Defendants filed their answer. *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) ("Here, given that both … motions to intervene were filed within mere days of the lawsuit, the motions are certainly timely."); *L.S. v. Cansler*, No. 5:11–cv–354, 2011 WL 6030075, at *4 (E.D.N.C. Dec. 5, 2011). Second, there can be little doubt that the RPV's proposed answer to Plaintiffs' complaint shares a common factual and legal basis with the main

6

action. The RPV introduces no unrelated, additional claims into this suit, and its argument that enjoining the witness signature requirement will dilute the votes of its members is a direct counter to the main thrust of Plaintiffs' complaint.

With respect to the third requirement of Rule 24(b), Plaintiffs argue that "permitting intervention [of the RPV or the individual voters] would only serve to delay and complicate resolution of this case and lead to greater risk of confusion close to the election." Dkt. 40 at 19. But at least with respect to the RPV, there appears little evidence that such concerns would materialize. First, as Plaintiffs acknowledge, the RPV has agreed to this Court's expedited briefing schedule. On both the preliminary injunction and partial consent decree, the RPV seeks no live testimony and will be prepared to submit any evidence relevant to its position at, or in advance of, the consent decree hearing on May 4, 2020. Because the RPV offers no counterclaims or crossclaims, will adhere to the Court's expedited briefing schedule, and does not appear positioned to impact the Court's ability to quickly resolve the parties' dispute with respect to the June 23 election, the Court finds that intervention will not result in undue delay or prejudice to the existing parties. Thus, the requirements of Rule 24(b) are satisfied, and the Court in its discretion may permit the RPV to intervene.

Furthermore, the concerns that counsel against allowing the individual voter intervenors into this case are absent with respect to the RPV. First, there is no concern that permitting the RPV to intervene in this litigation would result in an eruption of additional attempts at intervention: the RPV is one of the only two major political parties in the Commonwealth. Indeed, regardless of whether the RPV's interest in the litigation constitutes "a significantly protectable interest," sufficient under Rule 24(a)(2), *Donaldson v. United States*, 400 U.S. 517, 531 (1971), the RPV is indeed uniquely positioned within Virginia law such that little risk is posed that by their entry other

parties will seek leave to intervene on the same ground. *See Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 258 (D.N.M. 2008). Namely, the RPV is empowered to "provide for the nomination of its candidates, including the nomination of its candidates for office in case of any vacancy." Va. Code § 24.2-508. And with respect to the June 23 election in particular, it may participate in Virginia's direct primary process to facilitate this nomination process. Va. Code § 24.2-516. Indeed, several courts have ruled similarly in allowing political parties to permissively intervene in actions targeting statewide election procedures. *Jacobson*, 2018 WL 10509488, at *1; *Blackwell*, 2005 WL 8162665, at *2; *Bostelmann*, 2020 WL 1505640, at *5.

Defendants also argue that the RPV should be denied entry into this litigation because they adequately represent the interests the RPV purports to intervene in order to defend. Dkt. 49 at 8. First, it is true that although a putative intervenor must only demonstrate that the existing parties are inadequately representing its interests in order to intervene as a matter of right, this consideration remains relevant when a court considers whether to allow permissive intervention. *See Cooper*, 332 F.R.D. at 172 (M.D.N.C. 2019); *Herrera*, 257 F.R.D. at 249 ("While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention."). And at least in the Rule 24(a)(2) context, there is a strong presumption of adequacy when the existing defendant is a governmental entity representing the public interest. *Stuart*, 706 F.3d at 351. This is especially true when the putative intervenor shares the same ultimate objective in the litigation as the governmental defendant. *Westinghouse Elec. Corp.*, 542 F.2d at 216. Defendants argue that this case undoubtedly triggers these presumptions: not only is the suit defended by the Commonwealth of Virginia, but Plaintiffs specifically sue the Virginia Department of Elections and other election officials, and so Defendants' interest in the suit closely

8

overlap with the RPV's asserted interests in "the administration of its nominating process, the competitive environment in which its nominees seek election," and election integrity. Dkt. 49 at 8–9; Dkt. 54 at 2.

But the Court cannot ignore the stark divide between Defendants' and the RPV's current posture in this litigation at least with respect to the June 23 primary election—a divide that amounts to more than a mere disagreement in litigation strategy. Dkt. 40 at 16; *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) ("Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention."). While the RPV continues to support enforcement of Va. Code. § 24.2-707(A), *See* Dkt. 44 (RPV's brief in opposition to Plaintiff's Preliminary Injunction motion), Defendants have agreed to the statute's nonenforcement altogether for the June 23 primary. *See* Dkt. 35-1 (proposed partial consent judgment and decree). Indeed, while the decision to settle rather than litigate could in some circumstances fall within the boundaries of a litigation decision on which allied parties may disagree, *Arakaki*, 324 F.3d at 1086, the proposed consent decree appears to facilitate all relief Plaintiffs seek with respect to the June 23 primary election. *See* Dkt. 35-1 (proposed partial consent decree and judgment) ("For the Primary elections scheduled for June 23, 2020, Defendants shall not enforce the requirement, as stated in Va. Code § 24.2-706 and § 24.2-707"). And, on these concessions, the RPV has disagreed. Dkt. 58.

Defendants cite to *Lee v. Va. Bd. of Elections* for the proposition that "[a] court does not err in exercising its discretion by denying a motion to intervene when undue delay exists without a corresponding benefit to the process, the litigants, or the court, especially where an existing party zealously pursues the same ultimate objectives as a movant." No. 3:15-cv-357, 2015 WL 5178993, at *4 (E.D. Va. Sept. 4, 2015). But unlike the putative intervenors in *Lee*, each of these

9

considerations point in favor of the RPV's intervention in the present case. *Id.* The RPV has repeatedly committed to abiding by this Court's expedited schedule to resolve this matter with respect to the June 23 primary election, indicating that its intervention will not unduly delay the proceedings. *See* Dkt. 54 at 13. Although Defendants and the RPV may share the same ultimate outcome, Defendants in important respects are no longer "zealously pursu[ing]" that objective here. *Lee*, 2015 WL 5178993, at *4. In this regard, the RPV's inclusion in this action would ensure helpful adversarial testing to the parties' proposed partial consent decree, which would be beneficial to the Court and the overall adjudication of this action. *Id.* Thus, the Court will allow the RPV's permissive intervention as a defendant in this action.

3. Falter, Scott and Turner

For the reasons explained in this Court's Memorandum Opinion addressing the motion to intervene in this case submitted by Sheila DeLappe Ferguson, Sandy Burchett and Diane Crickenberger, Dkt. 22, Falter, Scott and Turner fail to demonstrate that they have the required interest in the issues underlying this suit.[3] Specifically, they fail to demonstrate a particularized interest in the subject matter at issue in this action. Further, the Court will deny their request to intervene permissively under Rule 24(b), because doing so on the mere basis that the requested relief threatens a constitutional right to vote risks opening the floodgates to every voter in the state. Thus, the motion will be denied in part as to them both because they fail to meet the requirements of Rule 24(a) and 24(b). Finally, the Court notes that Falter, Scott and Turner are represented by

---

[3] The Court recognizes that Turner stands on marginally different footing given his role in voter turnout efforts with the Young Republican Federation of Virginia. But ultimately, his interest in this capacity is no more than a generalized interest in the right to vote, compared to the RPV's statutory role in providing for the nomination of its candidates. *See Herrera*, 257 F.R.D. at 258 ("As an organization involved in helping to elect candidates to office, it has a direct and specific interest in the litigation that is not the same general interest in fair elections that is common to all voters.").

the same counsel as represents the RPV; the Court has considered their filings to date and will continue to consider the filings by the RPV as an Intervenor-Defendant.

### IV. Conclusion

For the foregoing reasons, the Court permits the RPV to intervene pursuant to Rule 24(b). For the reasons stated above and in its Memorandum Opinion denying Sheila DeLappe Ferguson, Sandy Burchett and Diane Crickenberger's motion to intervene, Dkt. 22, the Court denies the motion to intervene as it pertains to Falter, Scott, and Turner under both Rule 24(a)(2) or Rule 24(b).

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered: This 30th day of April, 2020.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE