**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF VIRGINIA;  KATHERINE  D. CROWLEY;  ERIKKA  GOFF;  and SEIJRA TOOGOOD,<br><br>    Plaintiffs,<br><br>v.<br><br>VIRGINIA  STATE  BOARD  OF ELECTIONS;  ROBERT  H.  BRINK, JOHN O'BANNON, and JAMILAH D. LECRUISE, in their official capacities as Chairman, Vice-Chair, and Secretary of the Virginia State Board of Elections, respectively;  and  CHRISTOPHER  E. PIPER,  in  his  official  capacity  as Commissioner of the Virginia Department of Elections,<br><br>    Defendants. | Case No. 6:20-cv-00024-NKM |

## PLAINTIFS' REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF PARTIAL CONSENT JUDGMENT AND DECREE

It is ironic that Defendant-Intervenor Republican Party of Virginia (the "RPV") objects to the proposed consent decree in this case, having itself recently sought to enjoin a Virginia election law in state court, intervening as plaintiffs in an action claiming the law was unconstitutional in the context of the COVID-19 pandemic. Indeed, after entry of a temporary injunction, the RPV then sought and entered into a consent order with the Commonwealth expanding the temporary injunction from one congressional district into several others through July 22, again, due to COVID-19. And in yet another lawsuit filed by a Republican candidate for elected office seeking relief from a law requiring a certain number of petition signatures to

qualify for the primary ballot, the RPV was a defendant and did not oppose a preliminary injunction against the state law due to COVID-19. Apparently the RPV thinks the protection extended to its candidate and delegates should be withheld from voters and that consent orders on injunctions on fast timetables are only appropriate for political parties, but not when the right to vote is at stake.

But now, when a non-partisan organization and individual voters seek similar relief from a state election law requiring them to obtain third party signatures to vote during a pandemic, the RPV protests a partial consent decree as "collusive," despite having made a similar arrangement only weeks ago. The Court should dismiss these crocodile tears, and instead grant the Partial Consent Judgment and Decree because it represents a fair, reasonable, and adequate settlement that serves the public interest in this unprecedented time. Indeed, while RPV may, and has, aired its views, it lacks standing to block approval of the Consent Decree or impose additional, confusing conditions at the final hour.

The consent decree represents hard fought progress for Plaintiffs, who were forced to bring this action and a preliminary injunction in order to bring the Commonwealth to the bargaining table to prevent deprivation of their right to vote. This agreement will preserve the right to vote and health of many Virginians, but grants Plaintiffs less than they sought in their preliminary injunction motion. That is the process that led to this compromise, and it is similar to how other consent decrees have played out in voting and other public interest cases across decades, albeit on the truncated timeline caused by the collision of a pandemic with a fast-approaching election.

Plaintiffs therefore respectfully request that the Court enter the proposed Partial Consent Judgment and Order.

## ARGUMENT

Plaintiffs do not ask that the Court "blindly accept" the proposed partial consent decree. *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). Rather, Plaintiffs merely ask the Court to review the relevant factors and, "guided by the general principle that settlements are encouraged," find the support provided sufficient to determine it fair, adequate, reasonable, and in the public interest. As demonstrated below, the RPV cites inapplicable cases and presents requirements for approval of consent decrees that are either easily met here, or not requirements at all.

**I.      While the Court May Consider the RPV's Viewpoint, the RPV has No Rights Implicated by the Agreement that Would Allow the RPV to Block or Alter it.**

While the RPV correctly contends its objections to the consent decree "may be heard" by the Court, RPV Opp. at 7, the implication that the RPV may somehow block the consent decree because it would alter its rights lacks any merit. This is because "while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent." *Loc. No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland* ("*Local No. 93*"), 478 U.S. 501, 528–29 (1986) (internal citations omitted). Of course, if an intervening party has an independent claim, then a consent decree "cannot dispose of the valid claims of nonconsenting intervenors." *Id.* at 529. But here, the RPV has no claims.

In fact, as demonstrated by one of the cases the RPV relies upon in its opposition, the RPV would need to demonstrate Article III standing in order to block the consent decree—an assertion even the RPV never makes and a finding the Court has not made. In *League of United Latin American Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 428 (5th Cir. 2011), a voter in small city intervened and blocked a consent decree proposing to change the way voters elected

their city council members. The court held that because the voter was "plainly seeking different relief from what the subsisting parties. . . are seeking, because he urges the court to reject the amended consent decree," he "must establish that he has Article III standing." *Id.* The Fifth Circuit found the intervenor had standing because the change at issue would have converted the city's elections from at-large voting to single-district voting and thus the voter would lose the right to vote for all five city council members due to the decree. *Id.* at 531. And in the other case cited by RPV for their right to object, *United States v. City of Miami*, 664 F.2d 435 (5th Cir. 1981) (en banc), the court held that consent decree would have modified the collective bargaining agreement the police union negotiated and therefore its rights were directly affected. *Id.* at 447.

Here, the RPV not only lacks standing to object to the consent decree, it lacks any significantly protectable interests. This Court granted RPV *permissive* intervention, and explicitly declined to rule on whether it has any significantly protectable interests. Mem. Opinion, ECF No. 60 at 7. The rights implicated by this case are those of the Plaintiffs and Virginia voters who would be disenfranchised by the operation of the witness requirement in its current form, and those of the Commonwealth which enforces these laws. Unlike the cases cited by the RPV, this law does not implicate *who is eligible* to participate in Republican Party primaries or conventions and thus does not implicate the RPV's associational rights under the First Amendment. Rather, this is a case about state administrative procedures for voting that will affect all voters and has no bearing on who or what category of person may vote in a Republican primary or convention. The State Board of Elections sets standards that "tightly regulate[]" the "form of ballots used in Virginia elections," *Marcellus v. State Bd. of Elections*, 849 F.3d 169, 172 (4th Cir. 2017)—not the RPV.

And despite the RPV's attempts to cast themselves as a counterweight in a partisan battle, *see* ECF No. 54 at 1 (referring to Plaintiffs as "three Democratic voters and an ideologically allied nonprofit group") and ECF No. 58 at 2 (same), RPV is the only partisan force at play here and thus has no special purpose as a counterbalance. While two of the three Plaintiffs are voting in open Democratic primaries, they seek relief to vindicate their rights as qualified Virginia voters, not as Democrats. And it is hard to think of a more non-partisan organization than the League of Women Voters, which has a long history of issues-based advocacy in support of voters, not on behalf of either political party. *Cf. Preminger v. Peake*, 536 F.3d 1000, 1010 (9th Cir. 2008) ("[t]he purpose of the . . . Democratic Central Committee is to promote the election of Democratic Party candidates . . . . The League [of Women Voters], by contrast, is nonpartisan. Although it seeks to influence public policy through education and advocacy, the League neither endorses nor opposes candidates—including partisan candidates—for office at any level of government"), *opinion amended and superseded on denial of reh'g,* 552 F.3d 757 (9th Cir. 2008).

Instead, the RPV has no direct interest like the police union did in *City of Miami*, because the proposed consent decree does not affect the terms of its relationship with party members or officials as the agreement did between the union members and the city. And unlike in *City of Boerne*, it does not change the way Republicans select their candidates. RPV is still free to choose its method for candidate selection and, in fact, used that prerogative to intervene and reach a consent agreement with the Commonwealth to extend statutory deadlines for its *non-primary selection process* due to a risk of constitutional violations if those deadlines stayed in place. *See* ECF No. 61-2. Finally, even if the RPV's inaccurate framing of this issue were taken as correct, at most it would have an interest in the Consent Decree's operation in the RPV's own

primaries, and in requiring Republican primary voters to provide witness signatures during the pandemic. The RPV certainly has no interest in the Consent Decree's operation in Virginia's Democratic primaries.

The Court has allowed the RPV to be heard and the Court can consider whether its legal arguments are persuasive. But the RPV has no direct interest in this consent decree beyond that. The Court should reject any implication otherwise.

## II.    The RPV's Fairness and Adequacy Arguments Improperly Skew the Appropriate Legal Standard, Fail to Recognize the Significant Concessions Made by Each Side, and Mischaracterize the Requirements for a Consent Decree.

The RPV asserts that the settlement agreement is not fair and adequate, nor legally proper, because the parties did not take enough time to hash out the legal issues of the case; that the Plaintiffs' claims had "significant weaknesses"; that the Defendants conceded too much; and that there is no finding of liability. As to the first three issues, the RPV ignores the unique posture of this case and limited nature of the agreement, mischaracterizes its own arguments about Plaintiffs' evidence, and fails to properly account for the concessions made by Plaintiffs. As to the final issue, the RPV misreads the consent decree and misstates the law.

First, under the RPV's standards, consent decrees should never be reached in cases requiring resolution on a short timeline. If the Parties had let the issues play out, the Plaintiffs risked missing their opportunity for relief (indeed, amici are already arguing that it is too late for relief under *Purcell*), and Defendants risked having less time to adapt its election procedures to prevent voter confusion and public health consequences like those emerging in Wisconsin. And although the RPV treats this proposed consent decree as one according full relief, it is in fact much narrower, affecting only one primary election for the subset of voters unable to safely find a witness. Under these unique circumstances and in these unique times, the proposed partial

consent decree should not be judged in comparison to a consent decree lasting years into the future, affecting many future elections, and binding future administrations.

Second, the RPV downplays the Plaintiffs' concessions while pointing to supposed weaknesses in their case in implying that Defendants conceded too much. While the RPV cites pages 8-14 of their opposition to the preliminary injunction motion as an indication of "significant weaknesses," RPV Opp. at 11, much of this takes issue with Plaintiffs' attempt to gain relief beyond the June primary. So the purported "weaknesses" called out by the RPV are not even pertinent to the proposed partial consent decree. Relatedly, the RPV downplays the significance of Plaintiffs' concession in the partial consent decree not to include relief for elections beyond June, which is ironic given that the RPV spent more than half of the argument section in their preliminary injunction opposition brief arguing that post-June relief was unwarranted. *See* ECF No. 44 at 17–26. For a supposedly minor concession, the RPV appears quite preoccupied with the issue. And while the RPV claims the request for post-June relief is "illusory," it ignores Plaintiffs' uncontested scientific evidence regarding the continuing risk of COVID-19 transmission beyond June, as well as the fact that the RPV itself has requested and obtained a state court consent judgment extending COVID-related relief *through late July*—a month in which two counties will hold special elections. *See* Pls.' PI Reply at 3, 14–15. The RPV also ignores Plaintiffs' waiver of their right to attorneys' fees.

Finally, the RPV also concocts a new legal principle from an assortment of case law, that the consent decree is inappropriate because it "asks this Court to exercise federal judicial power to enjoin a state statute without a finding that the statute violates federal law." RPV Opp. at 15. As an initial matter, this argument ignores that the proposed partial consent decree *does* support that it is necessary to remedy an impending constitutional violation. The proposed decree

7

explains that the "agreement *preserves the constitutional right to vote* of Plaintiffs and other Virginia voters . . . and does so without harming the integrity of Virginia's elections." ECF No. 35-1 at 5 (emphasis added). Magic incanting of the word "liability" is not necessary for entry of a consent decree, and any such requirement would elevate form over substance. Indeed, the Court need not "inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy" to enter a consent decree. *Bragg v. Robertson*, 83 F. Supp. 2d 713, 717 (S.D. W. Va. 2000), *aff'd sub nom. Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275 (4th Cir. 2001); *see also Local No. 93*, 478 U.S. at 522 ("it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree."). The cases cited by the RPV fail to show otherwise.

In *Kasper v. Board of Election Com'rs of the City of Chicago*, 814 F.2d 332, 342 (7th Cir. 1987), cited multiple times by the RPV, the Seventh Circuit explicitly rebuts their argument when it explains that an "alteration of the statutory scheme . . . depends on a violation of federal law" and required "a demonstration of at least a probable violation of that law as a condition to the entry of this decree." In other words, an admission of liability was not required, but instead a showing that superseding rights were likely being violated—here, the "constitutional right to vote of Plaintiffs and other Virginia voters." ECF No. 35-1 at 5.

In *League of United Latin American Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 847 (5th Cir. 1993), the problem with the proposed consent decree was not the lack of an underlying violation but rather that the proposed consent decree sought relief in an area where the parties had not identified an illegality. As the Fifth Circuit explained, a "consent decree must arise from the pleaded case and further the objectives of the law upon which the complaint is based." *Id.* at 846. That is precisely the case here, where Plaintiffs have identified the illegality—

a constitutional violation—and the consent decree seeks to address that precise issue. And in *National Review Corp. v. Violet*, 807 F.2d 285, 288 (1st Cir. 1986), the principle was that a court may not enter an unconstitutional consent judgment, the inverse of the consent judgment here.

As to *League of Women Voters of Michigan v. Benson*, No. 2:17-CV-14148, 2019 WL 8106156, at *2 (E.D. Mich. Feb. 1, 2019), the issue in that case was not a lack of admission of liability, but that there were parties to the case—sitting elected representatives whose districts would be affected by the redistricting agreement in the consent decree—who "would not obtain their requested relief if the Court entered the Proposed Consent Decree offered by Plaintiffs and Benson." And while the RPV quotes *League of Residential Neighborhood Advocates v. City of Los Angeles*, 498 F.3d 1052, 1055 (9th Cir. 2007), for the proposition that a "federal consent decree or settlement agreement cannot be a means for state officials to evade state law," this does not mean a consent decree cannot interpret or alter state law to prevent a constitutional violation. As the court in that case held, the "City might not have to comply with the procedural and substantive limitations set forth in its zoning ordinances if there has been a violation of federal law or if compliance will result in such a violation." *Id.* at 1057–58 (9th Cir. 2007); *see also Dillard v. City of Foley*, 926 F. Supp. 1053, 1065 (M.D. Ala. 1995) ("consent decrees, like other judgments, can be used to modify state law.").

Because the RPV misframes the nature of this partial consent decree, gives inappropriately short shrift to the concessions made by Plaintiffs, and relies on a non-existent legal principle that nonetheless would not defeat the agreement here, it has not rebutted the Consent Parties' showing of fairness, adequacy, and reasonableness.

### III.   The RPV Misunderstands the Collusion Standard and Fails to Rebut Evidence that the Proposed Consent Decree is in the Public Interest and not Collusive.

The RPV also implies that the proposed partial consent decree is collusive. But it submits no actual evidence of this purported collusion, simply ignoring the process that led to this agreement, and using general language from case law to stretch its meaning far beyond the factual contexts of those cases. In the RPV's conception, any consent decree could bear the "hallmarks of collusion." Moreover, the RPV's objections based on collusion are hardly credible when just last month, the RPV itself entered into a consent agreement with the Commonwealth to expand an extended temporary injunction that allowed the RPV to ignore statutory election requirements due to the pandemic in all non-primary-method congressional districts. *See* Plaintiff-Intervenor Republican Party of Va.'s Unopposed Mot. to Extend Temp. Injunction, *Seventh Cong. Dist. Republican Comm. v. Va. Dep't of Elections* ("*Seventh Cong. Dist.*"), No. CL20001640-00 (City of Richmond Cir. Ct. Apr. 20, 2020) (filed at ECF No. 61-2).

At the outset, the RPV implies that the parties are not genuinely adverse and do not possess separate interests in the outcome of the case. But the cases cited by the RPV contained actual evidence of collusion far different from the mere act of compromise in this case. In *United States v. Johnson*, 319 U.S. 302, 305 (1943), a case brought by a private party to challenge the constitutionality of a federal law, the suit was brought under a fictitious name, it was instituted at the defendant's request, the plaintiff "did not employ, pay, or even meet, the attorney who appeared of record in his behalf," and he "did not read the complaint which was filed in his name as plaintiff." *Id.* at 304. Similarly, in *Lord v. Veazie*, 49 U.S. 251 (1850), the parties conspired to bring a suit to obtain a judgment that secured the rights to one of them that a third party had large interests in and there was no real dispute. And in *Moore v. Charlotte-Mecklenburg Board of*

*Education*, 402 U.S. 47, 48 (1971), the Court confronted the "anomaly that both litigants desire precisely the same result, namely a holding that the anti-busing statute is constitutional."

Here, far from being a contrived or collusive lawsuit, Plaintiffs filed this action fully expecting and prepared to litigate their preliminary injunction motion to decision and beyond. On March 31, the ACLU of Virginia sent a letter to Governor Northam urging him to work with the Department of Elections to adopt a series of recommendations to "ensure that voting in all 2020 elections can occur safely and without disenfranchising any eligible voters," including by eliminating the witness requirement.[1] On April 14, Plaintiff League of Women Voters of Virginia sent a letter to Governor Northam urging that he expand options to vote at home, including by eliminating the witness requirement.[2] On April 15, the ACLU of Virginia sent a letter to Defendants requesting they take immediate action to alleviate the impact of the ongoing health crisis on upcoming elections by waiving Virginia's witness requirement. The letter informed Defendants that the ACLU and ACLU of Virginia intended to file a federal complaint on behalf of impacted persons and organizations if immediate action was not taken. *See* ACLU of Va. Ltr. to Defs., Apr. 15, 2020 (attached as Ex. A). The Parties did not reach an agreement, and Plaintiffs filed this action. The fact that a partial settlement was reached after Plaintiffs filed this case and their preliminary injunction motion indicates only that both parties carried distinct motivations to reach this resolution. This was not a case where the parties coordinated in advance of filing to achieve a mutually beneficial result, and thus is not collusive under the cases cited by the RPV or under any recognized legal principle.

---

[1] ACLU Va. Ltr. To Gov. Northam, Mar. 31, 2020,
https://acluva.org/sites/default/files/field_documents/covid19_executive_action_voting_rights_letter_final.pdf.

[2] LWV Va. Ltr. To Gov. Northam, Apr. 14, 2020, https://lwv-va.org/wp-content/uploads/2020/04/2020-04-10-LWV-VA-Letter-to-Gov.-Northam-re-Vote-by-Mail-1.pdf.

Nor is this a case where the parties "desire precisely the same result" of holding the witness requirement unconstitutional for the duration of the pandemic. This partial consent judgment will resolve only Plaintiffs' preliminary injunction motion, and indicates that Defendants intend to continue litigating this case and defending the challenged statute. As the Court correctly noted, the "parties' proposed partial consent decree makes clear that this action will continue, and that the parties have no intention of ceasing litigation." Mem. Opinion, ECF No. 60 at 6. Moreover, Plaintiffs' interests were for a broader, longer term remedy, while Defendants wished to have certainty and resolution only for the upcoming primary. This case is nothing like *Moore*.

The RPV also cites several cases for the proposition that courts should be wary of consent decrees that bind public officials to their predecessors' policy preferences. RPV Opp. at 14–15. But the partial consent decree here affects only the next two months, and does nothing to bind future administrations. Instead, it addresses an urgent situation in the context of a public health emergency—a need that the RPV surely recognizes through its state court litigation. Indeed, in *Carcaño v. Cooper*, No. 1:16CV236, 2019 WL 3302208, at *6 (M.D.N.C. July 23, 2019), despite its warning about binding of predecessors when there has been "little adversarial activity," the court entered the proposed consent decree.

Finally, the RPV makes a half-hearted argument that this agreement is not in the public interest, and broadly asserts that the "public interest is served by respecting state control over electoral processes." RPV Opp. at 17. But as another federal court recently held, the argument that it is "not in the public interest for a federal court to enter, enforce, and monitor a consent decree that dictates the operation of state-run elections" is "not a cogent objection" because whatever preferences for "federal noninterference in voting rights cases generally, . . . violations

of federal rights justify the imposition of federal remedies." *Common Cause Ind. v. Marion Cty. Election Bd.*, No. 117CV01388SEBTAB, 2018 WL 3770134, at \*2 (S.D. Ind. Aug. 9, 2018).

**IV.     The Alternative Remedy Proposed by the RPV Would Create Voter Confusion and Make it More Difficult for Election Officials to Timely Implement.**

In its last attempt to thwart the proposed partial consent decree, the RPV proposes adding new forms and imposing new requirements to replace the witness signature for certain voters in the June primary. This procedure is more involved than the one the RPV proposed just the day before, now implicating an additional form for some, but not all voters to sign. Adopting the RPV's proposal or some variation of it will likely cause voter confusion and result in additional Virginians who are needlessly disenfranchised.

For one, Plaintiffs do not understand the RPV's reference to Federal Rule of Evidence 408. To the extent it considers this proposal some sort of offer of settlement, as explained earlier, the RPV has no standing to interject itself into approval of the partial settlement or to change the consent decree's terms beyond making its views known to the Court. Thus, while Plaintiffs are happy to engage in further discussions and even consider mediation as the case moves forward, this eleventh-hour curveball should not be entertained.

Substantively, the RPV's idea will likely create more voter confusion and complicate the work of election officials as they begin to mail out ballots. Adding an additional form for voters to sign and attest that they are unable to safely obtain a witness signature will not only cause logistical issues, but will accomplish nothing beyond what the voter's attestation under penalty of perjury already does. By signing the attestation under the revised rules proposed by the consent decree, the voter is affirming their identity and eligibility as well as the truthfulness of their ballot. The RPV fails to show how signing an additional piece of paper serves any "anti-fraud" purposes.

And while having voters write the last four digits of their social security numbers as an alternative to the witness signature may be worth exploring as part of an appropriate remedy for future elections, imposing that requirement here will likely confuse some voters and risk greater disenfranchisement. Under any scenario, the absentee ballot envelopes for the June primary sent out will contain a line for a witness signature. Under the proposed consent decree, the instructions accompanying the ballot will inform voters that if they believe they may not safely obtain a witness signature, they can leave that line blank, and the process favors enfranchisement of these voters and the functioning of Virginia's other extensive anti-fraud measures. Under the RPV's proposal, voters who are unable to safely find a witness will have to write a different, unrelated piece of information on the witness line. Writing the last four digits of one's social security number on a line labeled "witness signature" is bound to create confusion and cause some voters to miss that odd instruction.

Plaintiffs remain ready to discuss the social security number proposal or other variations in terms of solutions for future elections. But, at this time, imposing new requirements that voters include a piece of information that is not specified on the ballot envelopes themselves would likely defeat some of the remedial intent of the consent decree and should be rejected.

## CONCLUSION

The RPV's objections to the proposed partial consent decree are surprising given its own recent conduct. No matter, its objections have no substantive merit either, as they fail to contend with the course of this litigation, substance of the consent decree, and legal framework surrounding consent decrees. The Court should reject the RPV's arguments and enter the proposed Partial Consent Judgment Decree as a fair, adequate, reasonable settlement that serves the public interest.

Dated: May 1, 2020

Respectfully submitted,

_/s/ Davin M. Rosborough_____

Vishal Agraharkar (VSB #93265)
Eden Heilman (VSB #93554)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF AMERICA, INC.
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
Fax: (804) 649-2733
vagraharkar@acluva.org
eheilman@acluva.org

Davin M. Rosborough (VSB # 85935)
Dale E. Ho*
Sophia Lin Lakin*
Theresa J. Lee*
Adriel I. Cepeda-Derieux*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
drosborough@aclu.org
dho@aclu.org
slakin@aclu.org
tlee@aclu.org
acepedaderieux@aclu.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*.

## **CERTIFICATE OF SERVICE**

I certify that on May 1, 2020, I served a copy of the foregoing Plaintiffs' Reply Brief in

Support of Joint Motion for Entry of Partial Consent Judgment and Decree via filing with the

Court's CMECF system, which sent copies of this document to Counsel of Record.


*/s/* Davin M. Rosborough
Davin M. Rosborough (VSB # 85935)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
drosborough@aclu.org

*Counsel for Plaintiffs*